Carolyn J. Johnsen (AZ 011894)
Robert A. Shull (AZ 003467)
Nicole F. Bergstrom (025475)
**DICKINSON WRIGHT, PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5000
Facsimile: (602) 285-5100
cjjohnsen@dickinsonwright.com
rshull@dickinsonwright.com
nbergstrom@dickinsonwright.com
*Attorneys for the Official Committee
of Unsecured Creditors*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>ELECTRIC TRANSPORTATION ENGINEERING CORPORATION (*d/b/a* ECOTALITY NORTH AMERICA), et al.[1]<br><br>Debtors. | Case No. 2:13-bk-16126-MCW<br>Chapter 11 Proceedings<br>Jointly Administered<br><br>Adv. Pro. No. 2:15-ap-00076-MCW<br><br>**COMPLAINT** |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>v.<br><br>BLINK UYA, LLC and CAR CHARGING GROUP, INC.,<br><br>Defendants. | |

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of their respective Employer Identification Numbers are: (i) ECOtality, Inc. (5422); (ii) Electric Transportation Engineering Corporation (4755); (iii) ECOtality Stores, Inc. (2643); (iv) ETEC North, LLC (n/a); (v) The Clarity Group, Inc. 8832; and (vi) G.H.V. Refrigeration, Inc. (4512). The Debtors' service address is ECOtality, Inc., P.O. Box 20336, Phoenix, Arizona 85036-0336.

1

This filing applies to:

■ All Debtors
□ Specified Debtors

Plaintiff, the Official Committee of Unsecured Creditors (the "**Committee**"), with the full support of the above-captioned debtors and debtors in possession (the "**Debtors**") by and through undersigned counsel, for its Complaint against Blink UYA, LLC ("**Blink**"), Car Charging Group, Inc. ("**CCGI**") states and alleges as follows:

1. On January 20, 2015, the Committee filed a "Motion to Set Aside Confirmation Order Pursuant to Bankruptcy Rule 9024" [Dkt. #790] (the "**Motion**") requesting the Court vacate and set aside the "Findings of Fact, Conclusions of Law and Order (a) Approving the Debtors' Disclosure Statement and (b) Confirming the Debtors' Joint Chapter 11 Plan" entered December 31, 2014 at 7:11pm [Dkt. #783] (the "**Confirmation Order**") approving the Debtors' Amended Joint Chapter 11 Plan of Reorganization (With Technical Modifications) dated December 23, 2014 (the "**Amended Plan**").

2. The relief by the Committee is supported by the Declarations of David Thompson ("**Thompson Declaration**" attached hereto as **Exhibit A**) and Carolyn Johnsen ("**Johnsen Declaration**" attached hereto as **Exhibit B**), Counsel for the Committee, and supporting documentation attached thereto.

3. The Motion moved for relief pursuant to Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed. R. Bankr. P. 9024.

4. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (L).

2

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 144 and 1334, such jurisdiction having been expressly reserved post-confirmation as set forth in Section 10.1 of the Amended Plan [Dkt. # 770] and paragraph 42 of the Confirmation Order.

**BACKGROUND**

6. The Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 16, 2013 and shortly thereafter, requested Court approval to sell substantially all of their assets.

7. Blink Acquisition, LLC, an affiliate of Defendants Blink and CCGI, along with two other parties, were the successful purchasers of a substantial portion of the assets. [*See* Order, Dkt. #213].

8. Contemporaneously with the sale, Blink approached the Debtors and the Committee about the possibility of filing a joint plan that would purportedly provide a greater distribution to unsecured creditors through the preservation and sharing of certain tax attributes of a "Reorganized Debtor."

9. As described in the Debtors' Omnibus Objection and Response to Certain Motion and Objections Filed by Blink [Dkt. #630], the parties were unable to agree to the terms of a plan base, in part, on Blink's failure to provide necessary information the Committee and the Debtors believed were critical to a joint plan.

10. As a result, the Debtors filed a liquidating Plan of Reorganization on July 1, 2014 [Dkt. #605] and requested expedited procedures to approve a disclosure statement and proceed with confirmation.

11. Blink objected on the basis that it wanted to pursue a competing plan that provided for a reorganized company and better treatment of unsecured creditors.

3

Case 2:15-ap-00076-MCW    Doc 1    Filed 02/02/15    Entered 02/02/15 13:52:04    Desc
Main Document    Page 3 of 14

12. In order to resolve this dispute, the parties reached an agreement that was placed on the record at a hearing on August 18, 2014 and set forth in the Court's Minute Entry dated August 19, 2014 [Dkt. #641].

13. The agreement, among other things, provided for what was to be the treatment of creditors, including unsecured creditors, under a consensual plan of reorganization among the Debtors, the Committee and Blink.

14. The essential terms required Blink to deposit for the benefit of creditors an immediate payment of $75,000, $100,000 upon filing of an agreed plan, and $100,000 on the effective date of the confirmed plan (the collective payments referred to as the "**Trust Deposit**").

15. The terms also required: 1) additional payments totaling $725,000, paid in three equal installments and distributed for the benefit of creditors commencing three years after the effective date and secured by the stock of CCGI and 2) fifty (50) percent of the tax savings attained by the Reorganized Debtor to be paid in cash for the benefit of the Debtors' estates and creditors.

16. On October 28, 2014, with the consent and approval of Blink, the Debtors filed their "Chapter 11 Plan of Reorganization" (the "**Plan**") and accompanying Disclosure Statement in support thereof. The Plan provided for the (a) the liquidation of Debtors' remaining assets through a Liquidating Trust and disbursement of the proceeds to creditors, (b) the issuance of fifty (50) percent of the stock of the Reorganized Debtor to a Stock Trust for the benefit of certain qualified unsecured creditors, (c) fifty (50) percent of the amount of any tax benefit (i.e. reduction in tax) recognized by the Reorganized Debtor or its Affiliates within the first five years following the Effective Date pursuant to a tax sharing agreement, and (d) additional payments for the benefit of creditors as described in paragraph 14 above.

4

17. The Plan also provided that the treatment outlined in paragraph 15 above would be set forth in certain definitive documents that would be filed with the Court as a "Plan Supplement" and incorporated in the Plan.

18. These documents would govern the entire structure and implementation of the Plan and included a Liquidating Trust Agreement, a Stock Trust Agreement, a Tax Sharing Agreement, a Stock Pledge Agreement, and the new Corporate Governance Documents.

19. The parties agreed they would have to negotiate and agree on the form of these documents and file them with the Court prior to confirmation.

20. On October 31, 2014, the Court entered an order granting conditional approval of the Debtors' Disclosure Statement and setting the confirmation hearing for December 15, 2014 (the "**Confirmation Hearing**").

21. The Plan was then noticed to all creditors and parties in interest.

22. During the negotiations over the next several weeks preparing the Plan Supplement documents, Blink advised the Debtors and the Committee that it would be unable to commit to the $725,000 cash installment payments that it previously agreed to in Court and in the filed Plan.

23. Instead, Blink suggested that in lieu of the cash payments secured by CCGI stock, CCGI would issue three shares of CCGI Series B convertible preferred stock convertible into CCGI common stock for the benefit of certain qualified unsecured creditors.

24. Counsel for Blink and CCGI represented that the Series B stock would be subordinate only to outstanding preferred shares designated as Series A and previously issued by CCGI. Blink's counsel emphasized that the Series B stock once converted into CCGI common stock could be sold to realize the cash previously promised.

5

Case 2:15-ap-00076-MCW    Doc 1    Filed 02/02/15    Entered 02/02/15 13:52:04    Desc
Main Document    Page 5 of 14

25. To effectuate this change, on November 25, 2014, counsel for Blink and CCGI proposed to the Debtors and the Committee an initial draft of a "Certificate of Designations of Preferences, Rights and Limitations of Series B Convertible Preferred Stock" ("**Series B Certificate**").

26. Because creditors would be substituting cash in exchange for stock whose future value could not be predicted, it was critical that (i) the Series B shares rank senior to any other preferred stock (other than the pre-existing Series A); (ii) no dividends of any kind could be paid by CCGI on any other preferred or common stock while the Series B shares were outstanding; and (iii) there be no change to the "rights, privileges, preferences of Series B" without the consent of the Series B holders.

27. The Debtors, Committee and Blink eventually agreed to the terms set forth in all of the Plan Supplement documents.

28. On November 28, 2014, with Blink's and the Committee's consent and approval, the Debtors filed the Plan Supplement [Dkt. #711] that included the Liquidating Trust Agreement, the Stock Trust Agreement and the Tax Sharing Agreement.

29. On December 5, 2014, with Blink's and the Committee's consent and approval, the Debtors filed the Plan Supplement [Dkt. #723] that included the Corporate Governance Documents and the Series B Certificate.

30. The Series B Certificate is the focus of this Complaint and the subject of the mis- and malfeasance perpetrated by Blink and CCGI on the Debtors, the Committee and the Court.

31. The original agreed upon and filed Series B Certificate to be executed by Michael Farkas as CEO of CCGI is attached as **Exhibit C**.

6

32. The Series B Certificate contained protective provisions that were critical to the willingness of the Committee and the Debtors to accept Blink's proposal to replace the cash payments with the new Series B shares.

33. The pertinent provisions of the Series B Certificate are as follows (emphasis added)

> Section 4. Ranking. In the event of liquidation, winding-up or dissolution, a Holder of Series B Preferred Stock shall be entitled to be paid out of the assets of the Corporation…senior with respect to the Corporation's Common Stock and future issued Preferred Stock of the Corporation."
>
> Section 5. Protective Provision.
>
> a. So long as any shares of Series B Preferred Stock are outstanding, the Corporation will not, without the affirmative approval of the Holders of a majority of the shares of the Series B Preferred Stock…**(i) alter or change adversely the powers, preferences or rights given to the Series B Preferred Stock…; (ii) authorize or create any class of stock ranking as to distribution of dividends senior to the Series B Preferred Stock; (iii) amend its certificate of incorporation…that would change the rights, privileges, preferences of the Series B Preferred Stock; …or (vi) enter into any agreement with respect to the foregoing**."
>
> b. So long as any shares of Series B Preferred Stock are outstanding, **no dividends or other distributions will be paid, declared or set apart with respect to any securities junior to the Series B Preferred Stock. Series B is senior to all other Preferred Stock except Series A.**

34. On the morning of the December 15th Confirmation Hearing, Blink counsel requested Committee counsel to meet and discuss yet another financial issue.

35. Blink's counsel stated that Blink would not be able to pay the second $100,000 of the Trust Deposit due on the effective date of the Plan (projected at that time to occur at year end due to certain business reasons advanced by Blink).

36. After negotiations occurring up to and during the Confirmation Hearing (requiring an extensive recess), the Debtors, Committee and Blink agreed in essence

7

that the remaining amount of the Trust Deposit would be paid no later than January 31, 2015.

37. If the amount was not paid by that date, the Stock Trustee would have the ability to pursue various rights and remedies to be provided in a revised Certificate of Designation of Preferences Rights and Limitations of Series B Convertible Preferred Stock.

38. The parties agreed that this new modification would be included in an Amended Plan the Confirmation Order and the appropriate Plan Supplement documents.

39. At the Confirmation Hearing, in which Blink actively participated, Blink offered as testimony the sworn Declarations of Michael Farkas, the CEO of CCGI ("**Farkas Declaration**") and Larry Gelfond, Blink's expert on the Reorganized Debtors' financial projections ("**Gelfond Declaration**") (attached hereto as **Exhibits D** and **E**, respectively).

40. At a continued Confirmation Hearing held on December 18, 2014, the Court indicated the Plan could be confirmed except for certain exculpation and release provisions that the Court would rule on at a later time. [*See* Minute Entry December 18, 2014 [Dkt. #762].

41. On December 19, 2014 [Dkt. #763], with the consent and approval of the Committee and Blink, the Debtors filed a second Plan Supplement attaching the revised Stock Trust Agreement, Tax Sharing Agreement and Series B Certificate, all changed to merely reflect the modification regarding payment of the Trust Deposit as described above in paragraph 13. (*See* **Exhibit F**, the blackline version of the Series B Certificate, which still contained the previously agreed upon "ranking" and "protective provisions" described in paragraph 12 above).

8

Case 2:15-ap-00076-MCW    Doc 1    Filed 02/02/15    Entered 02/02/15 13:52:04    Desc
Main Document    Page 8 of 14

42. On December 23, 2014, with the consent and approval of the Committee and Blink, the Debtors filed the Amended Plan [Dkt. #770] and lodged the Confirmation Order [Dkt. #771]].

43. The Court confirmed the Amended Plan on December 31, 2014. Paragraph 20 of the Confirmation Order specifically approved the issuance of the preferred stock contemplated by the Series B Certificate.

44. All that remained for the Amended Plan to become effective was execution of the Plan Supplement documents. In the course of obtaining Michael Farkas' signature on the Series B Certificate, on or about January 5, 2014, counsel for the Debtor and the Committee learned for the first time that in late December, during the time the Plan Supplement was being finalized and filed with the Court, all with Blink's approval and consent, CCGI issued a **new** class of preferred shares that subordinated the creditors' Series B preferred shares already approved by the Court. The new issuance of CCGI preferred stock is referred to as the "New Preferred."[2] (*See* **Exhibit G**).

45. Committee counsel soon discovered that a press release (**Exhibit H**) was issued on December 29, 2014 announcing the issuance of the New Preferred.

46. In reviewing the New Preferred documents, Committee counsel discovered the new series is in irreconcilable conflict with the "ranking" and the

---

[2] CCGI also disclosed that in addition to the "new" series of preferred, CCGI had previously authorized a preferred series, itself designated as Series "B". Counsel for CCGI represented that no Series "B" shares had ever been issued. Thus, the "new" series issued to investors was designated as Series "C," and the preferred to be issued to the Trust and formerly designated as Series "B" would become Series "D". For ease of reference, the "new" Preferred will be referred to in this Motion as the "New Preferred."

9

Case 2:15-ap-00076-MCW    Doc 1    Filed 02/02/15    Entered 02/02/15 13:52:04    Desc
Main Document    Page 9 of 14

"protective provision" language of the Series B Certificate that was vital to the Committee's agreement to the Plan and was ultimately approved by this Court.

47. For example, the New Preferred provides that CCGI may not authorize or issue any capital stock, including preferred stock, "unless the same ranks junior to the Preferred Stock with respect to the distribution of assets, the payment of dividends and redemption rights."

48. The New Preferred carries a quarterly, cumulative dividend payable in cash or additional preferred shares, compounded quarterly. The additional preferred shares likewise will receive dividends. The New Preferred Stock contains a right on the part of the holders to demand redemption any time after two years from the date of issuance (and earlier under certain circumstances).

49. This right to redeem creates a substantial threat to CCGI, because the holders of the New Preferred can require CCGI to return the entirety of the holders' cash investment (plus any accrued but unpaid cash dividend obligations) whenever CCGI has sufficient cash to do so. CCGI is permitted to refuse the redemption request, but if CCGI does so, the cash and preferred-stock dividend rate doubles, imposing even greater financial burdens on CCGI. These burdens will substantially impair the value of CCGI's common stock.

50. By its terms, the New Preferred is senior to the Trust's previously agreed upon Series B preferred, because the transaction approved in the Court's order of December 31 was not closed prior to the issuance of the New Preferred.

51. At no time during the entire confirmation chronology was the solicitation or issuance of the New Preferred or its terms ever disclosed to the Debtors, the Committee, or the Court. Rather, Blink approved the Amended Plan, the Plan Supplement and the Confirmation Order all of which referenced and incorporated the

10

Series B Certificate. Neither the sworn Farkas Declaration nor Gelfond Declaration revealed the issuance of the New Preferred or the monies raised in relation thereto.

52. The Series B Certificate and the priority it accorded was a material factor in the Committee approving the Amended Plan, the Plan Supplement and the Confirmation Order and the benefit has been largely eviscerated by the existence of the New Preferred.

53. Immediately after learning of CCGI and Blink's deception, counsel for the Committee and Debtors, engaged in discussions with counsel for CCGI and Blink to discuss potential solutions to remedy their and their client's misconduct.

54. The Committee incorporates herein by reference the Motion together with all of its exhibits, declarations, supplemental declarations and replies.

### FIRST CLAIM FOR EQUITABLE RELIEF
### (F. R. BANKR. P. 9024)

55. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

56. The Committee, the Debtors, and CCGI/Blink worked intensely throughout the month of December to finalize the Plan, draft and execute all necessary documents prior to December 31, 2014.

57. CCGI/Blink's intention to issue the New Preferred Stock with priority over and rights superior to the Trust's stock was information the Committee could not have known absent disclosure from CCGI/Blink.

58. This information was critical to the assessment of the consideration to be given to unsecured creditors.

59. Based on CCGI's and Blink's actions in promoting confirmation based on approved documents, the Debtors and the Committee mistakenly believed that

11

unsecured creditors were receiving the benefit and priority of Series B stock when that was not the case at all.

60. The Committee was unfairly surprised when it discovered, in early January, <u>after</u> the entry of the agreed to Confirmation Order, that the New Preferred had been issued on December 23, 2014 and the attributes of the New Preferred.

61. CCGI/Blink's actions in raising capital and issuing the New Preferred in late December were surreptitious. The Committee had no reason to know of these events. CCGI/Blink never disclosed the existence of the New Preferred until after the Confirmation Order had been entered.

62. The subordinated stock to be issued for the benefit of unsecured creditors is grossly inferior to the stock the Committee reasonably believed the Stock Trustee would acquire under the Amended Plan.

63. The Committee would not have agreed to the Amended Plan and would have objected to confirmation of a plan that contemplated this variance.

64. Federal Rule of Bankruptcy 9024 makes Federal Rule of Civil Procedure 60 applicable in this proceeding.

65. The Committee is entitled to relief pursuant to Rule 60, subsections (b)(1) mistake or surprise, (b)(2) newly discovered evidence; (b)(3) fraud, misrepresentation or misconduct, and (b)(6) other cause for relief in this case.

66. The Confirmation Order should be set aside based upon the Committee's mistake and surprise resulting from CCGI/Blink's intentional non-disclosure of material facts.

67. Newly discovered evidence warrants setting aside the Confirmation Order.

12

68. Defendants knowingly and intentionally misrepresented to Plaintiff and others that CCGI would issue stock to the Trust of a type consistent with the Series B Certificate. This conduct amounted to fraud and/or misconduct.

69. Plaintiffs are informed and believe that Defendants did not intend to issue such stock at the time such promises were made.

70. The intentional false misrepresentations, fraud and misconduct were material and caused Plaintiff to support confirmation of the plan.

71. Defendants intended that Plaintiff rely upon the misrepresentations, fraud and misconduct and in fact Plaintiff did rely on them.

72. It was reasonable for Plaintiff to rely upon Defendants' misrepresentations, fraud and misconduct and Plaintiff had the right to rely on the misrepresentations.

73. Plaintiff did not know the Defendants' representations were false.

### SECOND CLAIM FOR EQUITABLE RELIEF
### (11 U.S.C. §1144)

74. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

75. CCGI/Blink engaged in material omissions, misrepresentations, misconduct and fraud inducing the Committee's and Debtors' endorsement of the Amended Plan.

76. CCGI/Blink had reason to know that the Committee relied upon Blink's representations concerning the priority of its Series B stock in supporting confirmation of the plan. The Committee had a right to rely on these representations and had no knowledge of their falsity.

77. CCGI/Blink withheld material information.

13

Case 2:15-ap-00076-MCW    Doc 1    Filed 02/02/15    Entered 02/02/15 13:52:04    Desc
Main Document    Page 13 of 14

78. The misconduct perpetrated by CCGI/Blink in failing to disclose the issuance of the New Preferred Stock before Plan Confirmation is fraudulent.

79. But for CCGI/Blink's misconduct, the Committee would have objected to the Confirmation Order.

80. By this misconduct, omissions, misrepresentations and fraud, the Committee and bankruptcy estate were damaged. The Confirmation Order should be set aside. [3]

## PRAYER

Wherefore, Plaintiff requests that the Court grant equitable relief pursuant to Fed. R. Bankr. 9024, 11 U.S.C. §1144, and 11 U.S.C. §105 setting aside and vacating the Confirmation Order, together with other relief as deemed just and proper in the circumstances.

DATED this 2nd day of February, 2015.

**DICKINSON WRIGHT PLLC**

By: /s/ Carolyn J. Johnsen, # 011894
    Carolyn J. Johnsen
    Robert A. Shull
    Nicole F. Bergstrom
    *Attorneys for the Official Joint Committee of Unsecured Creditors*

PHOENIX 59520-1 197105v2

---

[3] All rights and remedies regarding civil causes of action or damages against Blink, CCGI, their affiliates, advisors, representatives, agents, officers and directors and other parties are specifically reserved.