IT IS HEREBY ADJUDGED and
DECREED this is SO ORDERED.

*The party obtaining this order is responsible
for noticing it pursuant to Local Rule 9022-1.*

**Dated: September 19, 2013**



*Randolph J. Haines*

**Randolph J. Haines, Chief Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re:

ELECTRIC TRANSPORTATION ENGINEERING
CORPORATION (d/b/a ECOTALITY NORTH
AMERICA), *et al.*,[1]

    Debtors.

This filing applies to:

    ■ All Debtors

    ☐ Specified Debtors

Case No. 2:13-BK-16126 (RJH)

Chapter 11

Jointly Administered

**ORDER (A) APPROVING BIDDING
PROCEDURES IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF
THE DEBTORS' ASSETS,
(B) SCHEDULING SALE HEARING,
(C) APPROVING THE FORM AND
MANNER OF THE SALE, AUCTION, AND
SALE HEARING, AND (D) GRANTING
RELATED RELIEF**

      Upon the motion (the "***Motion***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") seeking entry of an order (this "***Order***") (i) approving procedures (the "***Bidding Procedures***") for (a) submitting bids for the purchase of the Assets, and (b) conducting an auction for the Assets (the "***Auction***"); (ii) authorizing, but not requiring, the Debtors to (a) enter into a "stalking horse" agreement with one or more bidders (the "***Stalking Horse Bidder(s)***") for the purpose

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of their respective Employer Identification Numbers are: (i) ECOtality, Inc. (5422); (ii) Electric Transportation Engineering Corporation (4755); (iii) ECOtality Stores, Inc. (2643); (iv) ETEC North, LLC (n/a); (v) The Clarity Group, Inc. (8832); and (vi) G.H.V. Refrigeration, Inc. (4512). The Debtors' service address at ECOtality, Inc.'s corporate headquarters is Post Montgomery Center, One Montgomery Street, Suite 2525, San Francisco, California 94104.

of establishing a minimum acceptable bid(s) for the Assets (the "***Stalking Horse Bid(s)***"), (b) provide any Stalking Horse Bidder(s) with a break-up fee in the event that such Stalking Horse Bidder(s) is not the successful bidder for the Assets (the "***Successful Bidder(s)***") in an amount not to exceed two percent (2%) of the guaranteed cash purchase price proposed in the Stalking Horse Bid in accordance with the terms of the Bidding Procedures, and (c) reimburse any Stalking Horse Bidder(s) for reasonable and actual costs and expenses incurred by such Stalking Horse Bidder(s) in connection with its bid(s) in an amount not to exceed $25,000; (iii) approving procedures (the "***Assumption and Assignment Procedures***") for the assumption and assignment of certain executory contracts (the "***Assigned Contracts***") and unexpired leases (the "***Assigned Leases***") in connection with the sale of the Assets and resolution of any objections or requests for adequate assurance of future performance related thereto; (iv) scheduling (a) a deadline to submit bids for the Assets, (b) the date and time of the Auction, (c) the date and time of the hearing to consider approval of the proposed sale of the Assets to the Successful Bidder(s) (the "***Sale Hearing***"), and (d) a deadline to consummate a sale of the Assets; (v) approving the form and manner of notice of the deadline to submit bids for the Assets, the Auction and the Sale Hearing; and (vi) granting certain related relief, all as more fully set forth in the Motion;[2] and a hearing having been held to consider the relief requested in the Motion (the "***Bidding Procedures Hearing***"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein; and this Court having determined that the legal and factual bases set forth in the record establish just cause for the relief granted herein;

---

[2] All terms used but not defined herein shall have the meaning ascribed to them in the Motion, the Bidding Procedures, or the First Day Declaration, as applicable.

and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS THAT:[3]

1.     The Debtors have demonstrated that, under the circumstances described herein and in the Motion, there is a compelling and sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, (i) approval of the Bidding Procedures, (ii) authorization to enter into a Stalking Horse Agreement(s) with a Stalking Horse Bidder(s), (iii) authorization to provide the Stalking Horse Protections, and (iv) approval of the Assignment and Assumption Procedures.

2.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and are incorporated herein by reference as if fully set forth in this Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

3.     Entry by the Debtors, in their sole discretion, into one or more Stalking Horse Agreements is in the best interests of the Debtors' estates and creditors and will provide a clear benefit to the Debtors' estates and creditors.

4.     The Stalking Horse Protections and the Overbid Increments are fair, reasonable and appropriate and will provide a benefit to the Debtors' estates and creditors.

5.     Payment by the Debtors of any portion of the Stalking Horse Protections, under the conditions set forth in the Motion and in this Order, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of Bankruptcy Code section 503(b), (ii) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (iii) a material inducement for the Stalking Horse Bidder(s) to expend considerable time and resources pursuing the purchase of the Assets, and (iv) reasonable and appropriate in view of the fact that, if the Stalking Horse Protections are triggered, the efforts of the Stalking Horse Bidder(s) will have improved the ability of the Debtors to receive the highest and otherwise best bid for the Assets.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

6. The Sale Notice, substantially in the form attached to the Motion as **Exhibit B** and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Assets, the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

7. The Cure Schedule, substantially in the form attached to the Motion as **Exhibit C** and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts and the Assigned Leases in connection with the sale of the Assets and the related Cure Amount (as defined below), and no other or further notice is required.

8. The Contract Assignment Notice, substantially in the form attached to the Motion as **Exhibit D** and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts and the Assigned Leases in connection with the sale of the Assets and the related Cure Amount, and no other or further notice is required

IT IS HEREBY ORDERED that:

1. The Motion is granted to the extent provided herein.

**A.      The Bidding Procedures**

2. The Bidding Procedures are approved. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3. As further described in the Bidding Procedures, any Potential Bidder wanting to participate in the Auction must become a Qualified Bidder by submitting a Qualified Bid in writing to Debtors, through their proposed counsel, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), **so as to be actually received by the Debtors on or before October 7, 2013 at 5:00 p.m. (Pacific Time)** (the "***Bid Deadline***"), which deadline may be extended by the Debtors in consultation with the statutory

committee of unsecured creditors (the "***Creditors' Committee***") appointed in these chapter 11 cases, if any.[4]

4.      If two or more Qualified Bids are received on or before the Bid Deadline, the Debtors shall conduct the Auction on **October 8, 2013 at 10:00 a.m. (Mountain Standard Time)**, at the United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, 6th Floor, Courtroom 603, Phoenix, Arizona 85003, or such other location as the Debtors may advise any parties entitled to attend the Auction upon two (2) business days' notice, to determine the Successful Bid(s). The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtors shall have the right to cancel the Auction if two or more Qualified Bids are not received as of the Bid Deadline.

5.      The Sale Hearing shall be held on **October 9, 2013 at 1:30 p.m. (Mountain Standard Time)** at the United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, 6th Floor, Courtroom 603, Phoenix, Arizona 85003, before the Honorable Randolph J. Haines, Chief United States Bankruptcy Judge. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

6.      The Successful Bidder(s) shall be required to consummate the purchase of the Assets by **11:59 p.m. (Mountain Standard Time) on October 11, 2013**, subject to extension by the Debtors in their discretion.

**B.      Purchase Agreement(s)**

7.      The Debtors are authorized, but not required, in consultation with the Creditors' Committee, if appointed, to enter into a Stalking Horse Agreement(s) with one or more Stalking Horse Bidders on or before September 30, 2013. The Stalking Horse Agreement(s) shall be in such form and contain terms and provisions as the Debtors deem appropriate in their business judgment, subject to the limitations set forth in the Bidding Procedures regarding the Stalking Horse Protections. In the event that the Debtors enter into one or more Stalking Horse Agreements, the Debtors shall (i) promptly file

---

[4] Until there is a Qualified Bid (as defined below) for the Assets that is greater than $2.5 million, Nissan North America, Inc. (the "***DIP Lender***") shall have the same consultation rights granted to the Creditors' Committee in the Bidding Procedures.

a notice with the Court that includes a copy of any such agreement, and (ii) provide a copy of such agreement to any Potential Bidder upon request.

8.     If the Debtors do not enter into one or more Stalking Horse Agreements, the Form APA, a copy of which is attached to the Motion as **Exhibit E**, is hereby approved.

### C.     Stalking Horse Protections

9.     The Break-Up Fee, the Expense Reimbursement, and the Overbid Increments are approved and the Debtors are authorized to pay the Break-Up Fee and the Expense Reimbursement pursuant to the terms of the Bidding Procedures and the applicable Stalking Horse Agreement(s).  For the avoidance of doubt, the Break-Up Fee and the Expense Reimbursement shall be payable solely from the proceeds of a consummated sale, and only after all outstanding obligations under the DIP Loan have been paid in full by the Debtors.

### D.     Credit Bid

10.     The DIP Lender is hereby deemed a Potential Bidder in all respects, and shall have the option to submit a credit bid for some or all of the Assets to the fullest extent permitted under Bankruptcy Code section 363(k) (the "*Credit Bid*").   In the event that the DIP Lender chooses to submit a Credit Bid as permitted by the Bidding Procedures, it shall be considered a Qualified Bidder in all respects and afforded all rights associated therewith.  The DIP Lender, as well as any transferee of the DIP Loan, shall have the option to submit a Credit Bid at any time prior to the conclusion of the Auction.

### E.     Sale Notice Procedures

11.     The Sale Notice is approved.  Within one (1) business day of entry of this Order, the Debtors shall serve the Sale Notice by first class mail on: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee, if any is appointed; (iii) all known creditors of the Debtors; (iv) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets; (v) all counterparties to Assigned Contracts and Assigned Leases; (vi) any entity that has expressed a bona fide interest in acquiring the Assets; (vii) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the DOE; (x) the DOL; (xi) the United States Department of Justice; (xii) the United States Attorney's

Office for the District of Arizona; (xiii) the Attorneys General in the States where the Assets are located; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.

12. Within three (3) business days of entry of this Order, the Debtors shall publish a notice, in a form to be submitted to the Court (the "***Publication Notice***"), in the *USA Today* or such other publication(s) as the Debtors and their advisors deem appropriate under the circumstances. Such publication notice shall be sufficient and proper notice to any other interested parties whose identities are unknown to the Debtors.

**F.    Assumption and Assignment Notice Procedures**

13. The Assumption and Assignment Procedures, as set forth in the Motion and incorporated herein by reference as if fully set forth in this Order, are approved.

14. The Cure Schedule is approved. By September 27, 2013, the Debtors shall file with the Court and serve the Cure Schedule via overnight delivery on the non-Debtor counterparties to each of the Potentially Assigned Contracts and Leases. The Cure Schedule shall indicate whether the Debtors' books and records show any amounts due under each of the Potentially Assigned Contracts and Leases that must be cured in accordance with Bankruptcy Code sections 365(b) and (f)(2) (the "***Cure Amount***") prior to the assumption and assignment of such Potentially Assigned Contracts and Leases. To the extent that any non-Debtor counterparty to any of the Potentially Assigned Contracts and Leases wishes to object or request adequate assurance of future performance, such party should do so in accordance with the procedures set forth below.[5]

15. The Contract Assignment Notice is approved. No later than October 10, 2013, the Debtors shall file the Contract Assignment Notice with the Court and serve such Contract Assignment Notice via overnight delivery on the non-Debtor counterparties to such Assigned Contracts and Assigned Leases. The Contract Assignment Notice shall include (i) the title of the Assigned Contract or Assigned Lease to be assumed and assigned, (ii) the name of the non-Debtor counterparty to such

---

[5] For the avoidance of doubt, each of the Potentially Assigned Contracts and Leases included by the Debtors on the Cure Notice is included solely for purposes of providing notice that such Potentially Assigned Contracts and Leases may be assumed and assigned to the Successful Bidder(s). Inclusion of the Potentially Assigned Contracts and Leases on the Cure Notice will in no way bind the Debtors or the Successful Bidder(s) and all of the Debtors' rights to reject any of the Potentially Assigned Contracts and Leases are expressly reserved.

Assigned Contract or Assigned Lease, (iii) Cure Amounts, if any, (iv) the proposed effective date of the assignment, and (v) the identity of the Successful Bidder and a statement as to such Successful Bidder's ability to perform the Debtors' obligations under such Assigned Contract or Assigned Lease

16.     Any objection to the assumption and assignment of any Assigned Contract or Assigned Lease identified on the Cure Notice, including any objection to the Cure Amount set forth on the Cure Notice or to the ability of the Successful Bidder to provide adequate assurance of future performance under such Assigned Contract or Assigned Lease, must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, Suite 101, Phoenix, Arizona 85003 and be served on proposed counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), **so as to be <u>actually</u> <u>received</u> no later than October 7, 2013 at 5:00 p.m. (Pacific Time)** (the "***Assignment and Cure Objection Deadline***").

17.     Any request for adequate assurance information regarding the Successful Bidder(s) (a "***Request for Adequate Assurance***") must be in writing and be served on proposed counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), so as to be actually received no later than the Assignment and Cure Objection Deadline.  Requests for Adequate Assurance must include an email address, postal address and/or facsimile number to which a response to such request will be sent.  Upon receiving a Request for Adequate Assurance, the Debtors shall promptly after such request, but in no event later than one (1) business day after the Debtors' selection of the Successful Bid(s), provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

18.     If no objection to the proposed assumption and assignment of an Assigned Contract or Assigned Lease is timely received by the Assignment and Cure Objection Deadline, then the

assumption and assignment is authorized and the respective Cure Amount set forth in the Cure Notice shall be binding upon the counterparty to the Assigned Contract or Assigned Lease for all purposes and will constitute a final determination of total Cure Amount required to be paid by the Debtors in connection with such assumption and assignment to the Successful Bidder.

19.     To the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to assumption and assignment of the Assigned Contracts and Assigned Leases identified on the Cure Notice, including asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Assigned Contract or Assigned Lease, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C), (v) deemed to have agreed that all defaults under the applicable Assigned Contract or Assigned Lease arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Assigned Contract or Assigned Lease shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Assigned Contract or Assigned Lease or designate an early termination date under the applicable Assigned Contract or Assigned Lease as a result of any default that occurred and/or was continuing prior to the assignment date, and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Assigned Contract or Assigned Lease.

20.     If no objection to the proposed assumption and assignment of an Assigned Contract or Assigned Lease is received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to the Court a certificate of no objection and a form of order (a "**Certificate of No Objection**") granting such assumption and assignment, and serve such Certificate of No Objection on

the counterparty to such Assigned Contract or Assigned Lease or seek such determination pursuant to the Sale Order.

21.    If an objection is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or any later date set by the Court.[6] The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Assigned Contract or Assigned Lease.  If an objection is filed only with respect to the cure amount listed on the Cure Notice, the Debtors may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court.  The Debtors intend to cooperate with the counterparties to the Assigned Contracts and Assigned Leases to be assumed and assigned by the Debtors to attempt to reconcile any difference in a particular Cure Amount.

### G.    Objection Procedures

22.    All other objections to approval of the sale of the Assets to the Successful Bidder(s) shall must (i) be in writing; (ii) state with particularity the basis for the objection; and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, Suite 101, Phoenix, Arizona 85003 and be served on proposed counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), **so as to be <u>actually</u> <u>received</u> no later than October 7, 2013 at 5:00 p.m. (Pacific Time)** (the "*Objection Deadline*").

23.    Failure of any entity to file an objection on or before the Objection Deadline shall be deemed to constitute consent to the sale of the Assets to the Successful Bidder(s) and other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of the Assets, the assumption and assignment of

---

[6] To the extent that any non-Debtor counterparty objects to the assumption and assignment of an Assigned Contract or Assigned Lease, the Debtors reserve all rights, in consultation with the Successful Bidder(s), to reject such Assigned Contract or Assigned Lease, regardless of its prior designation as an Assigned Contract or Assigned Lease.

Assigned Contracts and Assigned Leases to the Successful Bidder(s), or the Debtors' consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder(s), if authorized by the Court.

### H. Department of Energy

24. **DOE Interests**. The provisions of this section shall apply notwithstanding any other provision of this Order and the Bidding Procedures approved therein. The Debtors are recipients or sub-recipients of certain financial assistance agreements from the United States (collectively, the "*Assistance Agreements*"), including without limitation: agreements numbered DE-EE0002194 and DE-EE0005501. Any real property, equipment or intellectual property acquired or developed by the Debtors using, in whole or in part, funds reimbursed under the Assistance Agreements (Government Funded Property) are subject to the United States' interests under federal law and regulations, including its interests as described in 10 C.F.R. §§ 600.321 and 600.325, the Bayh-Dole Act (35 U.S.C. 200 *et seq*.), and the "Patent Rights" provisions included in the Assistance Agreements pursuant to these regulatory and statutory authorities.

25. **Novation Requirements**. Any Stalking Horse Agreement(s) and Qualified Bid(s) must identify which, if any, of the Assistance Agreements for which the bidder(s) intend to seek a novation. The United States asserts that (i) if bidder(s), including the stalking horse bidder, intend to seek novation, the Purchased Assets listed must include the Debtors' interests in any Government Funded Property and any other assets or property necessary to perform the corresponding Assistance Agreement for which the bidder(s) intend to seek novation; (ii) in order to succeed to any of the Debtors' interests in continuing to perform the Assistance Agreements and thus to have potential access to any remaining funds still reimbursable under the Assistance Agreements, the proposed purchaser, upon approval of the sale by the Court, must obtain novation of the Assistance Agreements from the United States; and (iii) the United States maintains all discretion in determining whether to grant or deny a novation of any Assistance Agreement in accordance with federal law. The Debtors reserve all rights with respect to the foregoing assertions. The novation process is independent of the bidding process described in the Bidding Procedures, and will only formally commence following the Court's

approval of any sale of all assets necessary to perform the project described in the Assistant Agreement(s) for which novation is sought.

26. **Consent Requirement**. The United States asserts that no Assistance Agreement, or any other agreement between any of the Debtors and the United States, may be assumed and/or assigned by the Debtors without consent of the United States. The Debtors reserve all rights with respect to the foregoing assertion.

27. **Intellectual Property Rights**. Any intellectual property developed by Debtors under other financial assistance agreements with the United States, or any intellectual property developed under other financial assistance agreements acquired by Debtors from third parties is subject to the any interest of the United States' under federal law and regulations. The "Patent Rights" provisions generally provide, among other terms, that Debtors may retain the entire right, title, and interest to each invention conceived or first actually reduced to practice in the performance of work under the corresponding Assistance Agreement but that the United States will retain a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject invention.

## I. Related Relief

28. All objections to entry of this Order that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are overruled except as otherwise set forth herein.

29. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6004(d) 6006(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

30. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

31.     This Court shall retain jurisdiction with respect to all matters related to or arising from the implementation or interpretation of this Order

**\*\* DATED AND SIGNED ABOVE \*\***

# Exhibit 1

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "***Bidding Procedures***") to be employed in connection with the sale of the Assets (as defined below) of ECOtality, Inc. and Electric Transportation Engineering Corporation (d/b/a ECOtality North America) and certain of their affiliates that are debtors and debtors in possession (collectively, the "***Debtors***") in the jointly administered cases under title 11 of the United States Code (the "***Bankruptcy Code***") pending in the United States Bankruptcy Court for the District of Arizona (the "***Court***") (Case No. 2:13-BK-16126 (RJH)). Pursuant to the Bidding Procedures, the Debtors shall solicit bids for the purchase of the Assets, conduct an auction for the Assets (the "***Auction***") if the Debtors receive two or more Qualified Bids (as defined below), and thereafter seek entry of an order (the "***Sale Order***"), after notice and a hearing (the "***Sale Hearing***"), authorizing and approving the sale of the Assets to the Successful Bidder(s) (as defined below).

On September 15, 2013, the Debtors filed with the Court the *Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets (B) Scheduling Sale Hearing, (C) Approving the Form and Manner of the Sale, Auction, and Sale Hearing, and (D) Granting Related Relief, and (II) An Order Approving the Sale of Substantially All of the Debtors' Assets* (the "***Motion***").[1] On September [__], 2013, the Court entered an order approving the Bidding Procedures and scheduling **October 9, 2013 at 1:30 p.m. (Mountain Standard Time)** as the date and time that the Sale Hearing will be held.

---

## Important Dates

- **September 27, 2013:** Debtors to file and serve Cure Schedule

- **September 30, 2013 (5:00 p.m. Pacific Time):** Deadline to enter Stalking Horse Agreement(s)

- **October 7, 2013 (5:00 p.m. Pacific Time):** Deadline to submit a Qualified Bid

- **October 7, 2013 (5:00 p.m. Pacific Time):** Deadline to object to assignment of Assigned Contracts and Assigned Leases

- **October 7, 2013:** Deadline to file and serve objections to relief requested at the Sale Hearing

- **October 8, 2013 (10:00 a.m. Mountain Standard Time):** Date of Auction

- **October 9, 2013:** Announcement by Debtors of Successful Bidder(s) and Back-Up Bid

- **October 9, 2013 (1:30 p.m. Mountain Standard Time):** Date of Sale Hearing

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

- **October 10, 2013:** Deadline for Debtors to file and serve the Contract Assignment Notice

- **October 11, 2013 (11:59 p.m. Mountain Standard Time):** Deadline to consummate sale to Successful Bidder(s)

### A. Assets to be Sold

The Debtors seek to sell substantially all of their assets, including all equipment, machinery, inventory, supplies, real property, software, intellectual property, cash, and accounts receivable (such assets, the "*Assets*"). Except as otherwise provided in definitive documentation with respect to any sale of the Assets, all of the Debtors' right, title, and interest in and to the Assets shall be sold free and clear of all liens, claims, encumbrances, rights, remedies, restrictions, pledges, interests, liabilities, charges, options, and contractual commitments of any kind or nature whatsoever, whether arising before or after the date that the Debtors commenced these chapter 11 cases, whether at law or in equity, in accordance with Bankruptcy Code section 363.[2]

### B. Due Diligence

Upon request, the Debtors will provide any interested party with a copy of these Bidding Procedures, together with a copy of the Stalking Horse Agreement(s) (or the Form APA (as defined below), if no Stalking Horse Bidder(s) is selected) (each, as defined below). Should any interested party desire additional or further information, such interested party will be required to execute a confidentiality agreement (each a "*Confidentiality Agreement*") in form and substance satisfactory to the Debtors in their business judgment and on terms that are not more favorable to such interested party than the Confidentiality Agreement executed by the Stalking Horse Bidder(s), if any. Upon execution of such Confidentiality Agreement, the respective interested party will be deemed a "*Potential Bidder*" and will thereafter be afforded the opportunity to conduct a due diligence investigation with respect to the Assets in the manner determined by the Debtors, in their business judgment, to be reasonable and appropriate.

Potential Bidders will be given access (through a virtual data room, site inspections or otherwise) to various financial data and other relevant and confidential information. The Debtors will designate an employee or other representative to coordinate all requests for additional information or access from Potential Bidders. The Debtors may, in their business judgment, coordinate due diligence investigations such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The Debtors shall not be obligated to furnish access to any such information to any entity that does not execute a Confidentiality Agreement in form and substance satisfactory to the Debtors in their business judgment. The Debtors shall not be obligated to furnish access to

---

[2] Although the Debtors do not have any significant secured debt obligations, the DOE (as defined below) may assert interests in, or with respect to, certain of the Debtors' assets. The Debtors reserve their rights regarding the character, validity, extent, avoidability, and enforceability of any such interests.

any information of any kind whatsoever regarding the Assets after the Bid Deadline (as defined below).

In addition, in order to facilitate the preparation and submission of bids for the Assets, the Debtors will file any Stalking Horse Agreement(s) (or the Form APA, if no Stalking Horse Bidder is selected), and a form Sale Order, with the Court on or before **September 30, 2013**. Upon request, the Debtors will provide copies of such documents to any Potential Bidder. The use of uniform agreements will enable the Debtors and other parties in interest to easily compare and contrast the differing terms of any bids that may be received. The Debtors have the right not to consider any bid that does not conform to the form agreements. The Debtors shall provide an opportunity, on expedited basis, for a dialogue between Potential Bidder(s) and the DOE to the extent that either the Debtor, the DIP Lender (as defined below), or the Potential Bidder(s) at issue determines that such dialogue is beneficial.

## C. Bid Deadline

Any Potential Bidder wanting to participate in the Auction must become a Qualified Bidder (as defined below) by submitting a Qualified Bid (as defined below) in writing to (i) Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), **so as to be <u>actually</u> <u>received</u> by the Debtors on or before October 7, 2013 at 5:00 p.m. (Pacific Time)** (the "*Bid Deadline*"), which deadline may be extended by the Debtors in consultation with the statutory committee of unsecured creditors (the "*Creditors' Committee*")[3] appointed in these chapter 11 cases, if any. No bids submitted after the Bid Deadline shall be considered by the Debtors, unless the Debtors, in their business judgment and in consultation with the Creditors' Committee, if appointed, determine that consideration of such a bid is appropriate under the circumstances.

## D. Bid Requirements

Only bids for the Assets that constitute "Qualified Bids" will be considered by the Debtors. A "*Qualified Bid*" is an offer to purchase the Assets that, prior to the Bid Deadline:

   (i)      identifies in writing the Assets to be purchased and the consideration to be paid for such Assets;

   (ii)     identifies in writing any proposed revisions to the Stalking Horse Agreement(s), if any, or the form of asset purchase agreement provided by the Debtors (the "*Form APA*");

---

[3] Until there is a Qualified Bid (as defined below) for the Assets that is greater than $2.5 million, Nissan North America, Inc. (the "*DIP Lender*") shall have the same consultation rights granted to the Creditors' Committee herein.

(iii)     identifies in writing the Potential Bidder and the officer(s) or authorized agent(s) who will appear on behalf of such Potential Bidder at the Auction, if any;

(iv)     provides written and other evidence, satisfactory to the Debtors, in their business judgment, in consultation with the Creditors' Committee, if appointed, of the Potential Bidder's financial wherewithal and operational ability to consummate the proposed transaction by no later than October 11, 2013;

(v)     provides in writing that such offer is not subject to any due diligence or financing contingency or further board or similar approval;

(vi)     is accompanied by a good faith deposit (a "***Good Faith Deposit***") submitted to the Debtors on or before the Bid Deadline in a cash amount equal to not less than five percent (5%) of the proposed purchase price;

(vii)     identifies in writing any Assigned Contracts or Assigned Leases to be assumed and assigned in connection with the proposed purchase of the Assets, and provides evidence of the Potential Bidder's ability to provide adequate assurance of future performance (as provided for under Bankruptcy Code section 365) under such Assigned Contracts and Assigned Leases;

(viii)     provides in writing that each offer is irrevocable until the later of (a) consummation of a transaction involving any other Potential Bidder for the same Assets, and (b) the first business day that is thirty (30) days after the conclusion of the Sale Hearing;

(ix)     includes a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to submit an offer to purchase the Assets specified on the terms proposed by such Potential Bidder;

(x)     complies with all requirements of the Novation Requirements section in the Bid Procedures Order; and

(xi)     contains the form of Sale Order approving the proposed transaction that the Potential Bidder would request the Debtors to submit to the Court.

As soon as practicable after a Potential Bidder submits a bid, the Debtors, in consultation with the Creditors' Committee, if appointed, will determine whether such bid is a Qualified Bid and will notify such Potential Bidder of such determination. The Debtors may, in their business judgment, communicate with any Potential Bidder and may request any additional information reasonably required in connection with the evaluation of such Potential Bidder or bid submitted by such Potential Bidder. To the extent that the Debtors determine that a bid submitted by a Potential Bidder is a Qualified Bid, such Potential Bidder shall then be deemed a "***Qualified Bidder***" and be allowed to participate in the Auction in all respects. The Debtors reserve the right, in their business judgment, to consider bids for the Assets that do not conform

to one or more of the aforementioned requirements, and, in consultation with the Creditors' Committee, if appointed, may deem such bids to be Qualified Bids notwithstanding such requirements. The Debtors also may consider bids that call for the purchase of the Assets on a piecemeal basis, as well as bids for substantially all of the Assets, if the Debtors, in their business judgment and in consultation with the Creditors' Committee, if appointed, believe that such bids will result in a value maximizing transaction. As promptly as practical under the circumstances following a determination that a Qualified Bidder has submitted a Qualified Bid, the Debtors shall forward any such Qualified Bid to the DOE, or in the event that there are no Qualified Bids, inform the DOE that there are no Qualified Bids.

### E. Stalking Horse Bid

If the Debtors receive one or more Qualified Bids on or before **September 30, 2013 at 5:00 p.m. (Pacific Time)**, the Debtors, in consultation with the Creditors' Committee, if appointed, may, but shall not be required to, enter into a "stalking horse" agreements (the "*Stalking Horse Agreement(s)*") with one or more Qualified Bidders (the "*Stalking Horse Bidder(s)*") for the purpose of establishing a minimum acceptable bid(s) for the assets subject to the Stalking Horse Agreement(s) (the "*Stalking Horse Bid(s)*"). The Stalking Horse Agreement(s) shall be in such form and contain terms and provisions as the Debtors deem appropriate in their business judgment, subject to the limitations set forth in the Bidding Procedures regarding the Stalking Horse Protections (as defined below). Any Stalking Horse Bid shall be deemed a Qualified Bid for purposes of these Bidding Procedures. In the event that the Debtors enter into a Stalking Horse Agreement, the Debtors shall (i) promptly file a notice with the Court that includes a copy of any such agreement, and (ii) provide a copy of such agreement to any Potential Bidder upon request.

### F. Stalking Horse Protections

#### 1. Break-Up Fee

The Debtors may, in their business judgment, provide the Stalking Horse Bidder(s) with a fee of up to two percent (2%) of the guaranteed cash purchase price proposed in the Stalking Horse Bid (the "*Break-Up Fee*"); *provided*, that such Stalking Horse Bidder is not in breach under the Stalking Horse Agreement or has not previously terminated such agreement. The Break-Up Fee will be payable to a Stalking Horse Bidder only if the Debtors, at the Auction, select as the Successful Bid(s) a Qualified Bid by a Qualified Bidder that is not the Stalking Horse Bidder for the sale of Assets that are substantially all of the Assets subject of the Stalking Horse Agreement and consummate the sale to such Successful Bidder(s) following approval by the Court at the Sale Hearing. Further, the Break-Up Fee shall be payable solely from the proceeds of a consummated sale, and only after all outstanding obligations under the Debtors' debtor in possession financing facility (the "*DIP Loan*") have been paid in full by the Debtors.

#### 2. Expense Reimbursement

The Debtors may, in their business judgment, reimburse the Stalking Horse Bidder(s) for all reasonable and actual costs and expenses, in an amount up to $25,000, that were incurred by each Stalking Horse Bidder in connection with its bid (the "*Expense Reimbursement*," and

together with the Break-Up Fee, the "***Stalking Horse Protections***"); _provided_, that such Stalking Horse Bidder is not in breach under the Stalking Horse Agreement or has not previously terminated such agreement. The Expense Reimbursement will be payable to a Stalking Horse Bidder (i) only if the Debtors, at the Auction, select as the Successful Bid(s) a Qualified Bid by a Qualified Bidder that is not the Stalking Horse Bidder for the sale of Assets that are substantially all of the Assets subject of the Stalking Horse Agreement and consummate the sale to such Successful Bidder(s) following approval by the Court at the Sale Hearing, or (ii) if the Debtors are unable to consummate the sale of the Assets pursuant to the Stalking Horse Agreement for any reason other than breach or termination by the Stalking Horse Bidder. Further, the Expense Reimbursement shall be payable solely from the proceeds of a consummated sale, and only after all outstanding obligations under the Debtors' DIP Loan have been paid in full by the Debtors.

### G. Credit Bid

The DIP Lender shall be deemed a Potential Bidder in all respects, and shall have the option to submit a credit bid for some or all of the Assets to the fullest extent permitted under Bankruptcy Code section 363(k) (the "***Credit Bid***"). In the event that the DIP Lender chooses to submit a Credit Bid as permitted by these Bidding Procedures, it shall be considered a Qualified Bidder in all respects and afforded all rights associated therewith. Notwithstanding the Bid Deadline, the DIP Lender, as well as any transferee of the DIP Loan, shall have the option to submit a Credit Bid at any time prior to the conclusion of the Auction.

### H. Auction

If two or more Qualified Bids are received on or before the Bid Deadline, the Debtors shall conduct the Auction commencing on **October 8, 2013 at 10:00 a.m. (Mountain Standard Time)**, at the the United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, 6th Floor, Courtroom 603, Phoenix, Arizona 85003, or such other location as the Debtors may advise any parties entitled to attend the Auction upon two (2) business days' notice, to determine the highest or otherwise best bid(s) for the Assets (the "***Successful Bid(s)***"). The Auction may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Auction. The Debtors reserve the right to cancel the Auction if two or more Qualified Bids are not received as of the Bid Deadline.

### I. Auction Procedures

Only an entity that has submitted a Qualified Bid (a "***Qualified Bidder***"), the United States Department of Energy (the "***DOE***"), the Office of the United States Trustee for the District of Arizona (the "***U.S. Trustee***"), the Creditors' Committee, if appointed, and each such entity's respective preferred advisors are eligible to participate in the Auction. All participants shall appear in person or through a duly authorized representative. Prior to the Auction, the Debtors, in consultation with the Creditors' Committee, if appointed, shall select the Qualified Bid that, in their business judgment, reflects the highest or otherwise best bid for the Assets as the starting bid (the "***Starting Auction Bid***"), and shall advise all participants in the Auction of the terms of the Starting Auction Bid. In the event that the only bids received by the Debtors are for certain of the Assets, the Debtors reserve the right, in consultation with the Creditors' Committee, if appointed, to designate any such Qualified Bids as the starting Auction Bids.

Case 2:13-bk-16126-RJH    Doc 56    Filed 09/19/13    Entered 09/19/13 16:49:33    Desc
Main Document    Page 20 of 26

Qualified Bidders may then submit bids that are better and higher than the Starting Auction Bid in an initial increment amount equal to the amount of any Stalking Horse Protections plus $250,000 and subsequent increments of at least $100,000 (collectively, the "*Overbid Increments*").  The Debtors shall determine whether any Qualified Bid is the Successful Bid pursuant to the "Determination of Successful Bid" section below.

## J.    Determination of Successful Bid and Notice Thereof

On or before October 9, 2013, the Debtors, in consultation with the Creditors' Committee, if appointed, shall review each Qualified Bid that has been submitted and determine, in the Debtors' business judgment and in consultation with the Creditors' Committee, if appointed, which Qualified Bid(s) is the highest and best and, therefore, the Successful Bid(s). In making such determination, the Debtors, in consultation with the Creditors' Committee, if appointed, shall consider any factor that they deem relevant, including the purchase price, the payment of any Break-Up Fee or Expense Reimbursement, any benefit to the Debtors' estates from any proposal to assume liabilities of the Debtors, and those factors affecting the speed and certainty of consummating the sale of the Assets.  The presentation of the Successful Bid(s) to the Court for approval does not constitute the Debtors' acceptance of such bid(s).  The Debtors will be deemed to have accepted the Successful Bid(s) only when such bid(s) has been approved by the Court pursuant to a Sale Order and the sale of the Assets proposed in such bid has been consummated.

As soon as practicable following the determination of the Successful Bid(s), but no later than October 9, 2013, the Debtors shall file a notice with the Court identifying the Qualified Bidder(s) that submitted the Successful Bid(s) (the "*Successful Bidder(s)*") and serve such notice by telecopy, electronic mail transmission, or overnight delivery, upon the following entities:  (i) the U.S. Trustee; (ii) the DOE; (iii) the United States Department of Labor (the "*DOL*"); (iv) counsel to the Creditors' Committee, if appointed; (v) the parties listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (vi) all Qualified Bidders that have submitted a Qualified Bid; (vii) all non-Debtor counterparties to the Assigned Contracts and Assigned Leases proposed to be assumed and assigned under the Successful Bid(s); and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors may adjourn, continue, re-open, or terminate the Auction, subject to any required approval of the Court, and reserve the right to adopt other and further rules and procedures for the Auction that, in their business judgment and in consultation with the Creditors' Committee, if appointed, will better promote the goals of the Auction.

## K.    Back-Up Bid

The Successful Bidder(s) shall be required to consummate the purchase of the Assets by **11:59 p.m (Mountain Standard Time) on October 11, 2013**, subject to extension by the Debtors in their business judgment.  If the Successful Bidder(s) fails to timely consummate the purchase of the Assets, or any part thereof, then the next highest or otherwise best Qualified Bid (if any) (the "*Back-up Bid*") may be designated by the Debtors, in consultation with the Creditors' Committee, if appointed, as the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale of the Assets to the Qualified Bidder that submitted the

Back-Up Bid pursuant to the terms of such Back-Up Bid as soon as is commercially reasonable. If the Successful Bidder(s) fails to consummate the purchase of the Assets because of a breach, default or failure to perform on the part of such Successful Bidder(s), the Debtors reserve the right to seek all available damages from such Successful Bidder(s).

### L. <u>Reservation of Rights</u>

#### 1. Determination of Successful Bid

The Debtors reserve the right to (i) determine in their business judgment, in consultation with the Creditors' Committee, if appointed, whether any Qualified Bid is a Successful Bid, and (ii) reject, at any time prior to entry of the Sale Order by the Court, without liability, any bid that the Debtors, in their business judgment and in consultation with the Creditors' Committee, if appointed, determine to be (a) inadequate or insufficient, (b) not in conformity with the Bidding Procedures, the Bankruptcy Code, or the Federal Rules of Bankruptcy Procedure, or (c) contrary to the best interests of the Debtors and their estates.

At or before the Sale Hearing, the Debtors may impose such other terms and conditions on the sale of the Assets as the Debtors, in consultation with the Creditors' Committee, if appointed, may determine to be in the best interests of the Debtors and their estates.

#### 2. Modification of Bidding Procedures

The Debtors reserve the right to modify the Bidding Procedures, in consultation with the Creditors' Committee, if appointed, without the need for any further order of the Court, including by (i) extending the deadlines set forth in the Bidding Procedures, (ii) adjourning the Auction and the Sale Hearing, and (iii) withdrawing any Assets from the sale process at any time prior to or during the Auction.

### M. <u>Disposition of Good Faith Deposits</u>

All Good Faith Deposits shall be held in a separate non-interest-bearing escrow account for the benefit of the Debtors. As soon as practicable following the consummation of the sale of the Assets, any Good Faith Deposit received from a Qualified Bidder who is not determined to be the Successful Bidder shall be released from escrow and returned to such Qualified Bidder. If the Successful Bidder fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default, or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtors without affecting or reducing any of the Debtors' other rights or claims against such Successful Bidder. If a Successful Bidder fails to consummate the purchase of the Assets, or any part thereof, because of a breach, default, or failure to perform on the part of the Debtors, the Good Faith Deposit deposited by such Successful Bidder shall be returned to such Successful Bidder. If a Successful Bidder consummates the purchase of the Assets, the Good Faith Deposit deposited by such Successful Bidder shall be applied as a credit toward the purchase price paid by such Successful Bidder.

## N.    As Is, Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their estates, or their agents or representatives.  Except as otherwise expressly provided in these Bidding Procedures, any applicable Stalking Horse Agreement, or any applicable Asset Purchase Agreement, by submitting a bid, each Potential Bidder that submits a bid shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

## O.    Assigned Contracts and Assigned Leases

By September 27 2013, the Debtors will file with the Court a schedule, substantially in the form attached to the Motion as **Exhibit C**, (the "*Cure Schedule*") of each of the executory contracts and unexpired leases that may be assumed and assigned to the Successful Bidder(s) (the "*Potentially Assigned Contracts and Leases*").  The Cure Schedule, which will be served via overnight delivery on the non-Debtor counterparties to each of the Potentially Assigned Contracts and Leases, will indicate whether the Debtors' books and records show any amounts due under each of the Potentially Assigned Contracts and Leases that must be cured in accordance with Bankruptcy Code sections 365(b) and (f)(2) (the "*Cure Amount*") prior to the assumption and assignment of such Potentially Assigned Contracts and Leases.  To the extent that any non-Debtor counterparty to any of the Potentially Assigned Contracts and Leases wishes to object or request adequate assurance of future performance, such party should do so in accordance with the procedures set forth below.[4]

As soon as practicable after selecting the Successful Bidder(s), such Successful Bidder(s) shall submit a schedule of the Potentially Assumed Contracts and Leases that it wishes to be Assigned Contracts and Assigned Leases.  However, by no later than October 10, 2013, the Debtors will file a notice, substantially in the form attached to the Motion as **Exhibit D** (the "*Contract Assignment Notice*"), with the Court and serve such Contract Assignment Notice via overnight delivery on the non-Debtor counterparties to such Assigned Contracts and Assigned Leases.  The Contract Assignment Notice will include (i) the title of the Assigned Contract or Assigned Lease to be assumed and assigned, (ii) the name of the non-Debtor counterparty to such Assigned Contract or Assigned Lease, (iii) Cure Amounts, if any, (iv) the proposed effective date of the assignment, and (v) the identity of the Successful Bidder and a statement as

---

[4] For the avoidance of doubt, each of the Potentially Assigned Contracts and Leases included on the Cure Schedule are included solely for purposes of providing notice that such Potentially Assigned Contracts and Leases may be assumed and assigned to the Successful Bidder(s).  Inclusion of the Potentially Assigned Contracts and Leases on the Cure Schedule will in no way bind the Debtors or the Successful Bidder(s) and all rights to reject any of the Potentially Assigned Contracts and Leases are expressly reserved.

to such Successful Bidder's ability to perform the Debtors' obligations under such Assigned Contract or Assigned Lease.

Any objection to the assumption and assignment of any Assigned Contract or Assigned Lease identified on the Cure Schedule, including any objection to the Cure Amount set forth on the Cure Schedule or to the ability of the Successful Bidder to provide adequate assurance of future performance under such Assigned Contract or Assigned Lease, must (i) be in writing, (ii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, Suite 101, Phoenix, Arizona 85003 and be served on proposed counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), so as to be actually received no later than **October 7, 2013 at 5:00 p.m. (Pacific Time)** (the "***Assignment and Cure Objection Deadline***").

Any request for adequate assurance information regarding the Successful Bidder(s) (a "***Request for Adequate Assurance***") must be in writing and be served on proposed counsel for the Debtors, Akin Gump Strauss Hauer & Feld LLP, Century Park East, Suite 2400, Los Angeles, California 90067 (Attn: David P. Simonds and Arun Kurichety), and Parker Schwartz, PLLC, 7310 N. 16th St., Suite 330, Phoenix, Arizona 85020 (Attn: Jared G. Parker), so as to be actually received no later than the Assignment and Cure Objection Deadline. Requests for Adequate Assurance must include an email address, postal address and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance, the Debtors shall promptly after such request, but in no event later than one (1) business day after the Debtors' selection of the Successful Bid(s), provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile, or overnight delivery.

If no objection to the proposed assumption and assignment of an Assigned Contract or Assigned Lease is timely received by the Assignment and Cure Objection Deadline, then the assumption and assignment is authorized and the respective Cure Amount set forth in the Cure Schedule shall be binding upon the counterparty to the Assigned Contract or Assigned Lease for all purposes and will constitute a final determination of total Cure Amount required to be paid by the Debtors in connection with such assumption and assignment to the Successful Bidder.

To the extent that any entity does not timely object as set forth above, such entity shall be (i) forever barred from objecting to assumption and assignment of the Assigned Contracts and Assigned Leases identified on the Cure Schedule, including asserting any additional cure payments or requesting additional adequate assurance of future performance, (ii) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Assigned Contract or Assigned Lease, (iii) bound to such corresponding Cure Amount, if any, (iv) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C), (v) deemed to have agreed that all defaults under the applicable Assigned Contract or Assigned Lease arising or continuing prior to the effective date of the assignment have been cured as a

result or precondition of the assignment, such that the Successful Bidder or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Assigned Contract or Assigned Lease shall remain in full force and effect for the benefit of the Successful Bidder and such entity in accordance with its terms, (vi) deemed to have waived any right to terminate the applicable Assigned Contract or Assigned Lease or designate an early termination date under the applicable Assigned Contract or Assigned Lease as a result of any default that occurred and/or was continuing prior to the assignment date, and (vii) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Assigned Contract or Assigned Lease.

If no objection to the proposed assumption and assignment of an Assigned Contract or Assigned Lease is received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to the Court a certificate of no objection and a form of order (a "***Certificate of No Objection***") granting such assumption and assignment, and serve such Certificate of No Objection on the counterparty to such Assigned Contract or Assigned Lease.

If an objection is timely received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or any later date set by the Court.[5] The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Assigned Contract or Assigned Lease. If an objection is filed only with respect to the cure amount listed on the Cure Schedule, the Debtors may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court. The Debtors intend to cooperate with the counterparties to the Assigned Contracts and Assigned Leases to be assumed and assigned by the Debtors to attempt to reconcile any difference in a particular Cure Amount.

P.      **Sale Hearing**

The sale of the Assets and the Stalking Horse Agreement (or a modified APA related to the Successful Bid(s)) shall be presented for authorization and approval by the Court at the Sale Hearing, which is scheduled to be held on **October 9, 2013 at 1:30 p.m. (Mountain Standard Time)** at the United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, 6th Floor, Courtroom 603, Phoenix, Arizona 85003, before the Honorable Randolph J. Haines, Chief United States Bankruptcy Judge. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

---

[5] To the extent that any non-Debtor counterparty objects to the assumption and assignment of an Assigned Contract or Assigned Lease, the Debtors reserve all rights, in consultation with the Successful Bidder(s), to reject such Assigned Contract or Assigned Lease, regardless of its prior designation as an Assigned Contract or Assigned Lease.

**Q.** <u>**Jurisdiction**</u>

The Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bidding Procedures, Stalking Horse Agreement(s), if any, any applicable asset purchase agreement, and any other matter that in any way relates to the foregoing. All entities that submit a bid for the purchase of the Assets shall be deemed to have consented to the core jurisdiction of, and venue in, the Court and to have waived any right to a jury trial in connection with any disputes relating to the sale of the Assets, the Bidding Procedures, Stalking Horse Agreements, any applicable Asset Purchase Agreement, and any other matter that in any way relates to the foregoing.