ILENE J. LASHINSKY (#003073)
United States Trustee

ELIZABETH C. AMOROSI (#10755)
Assistant United States Trustee
230 N. First Ave., Suite 204
Phoenix, Arizona 85003-1706
Phone: (602) 682-2619
FAX: (602) 514-7270

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>ELECTRIC TRANSPORTATION ENGINEERING CORPORATION, *et al*,<br><br>Debtors. | In Proceedings under Chapter 11<br><br>Case No. 2:13-bk-16126-RJH<br><br>Jointly Administered<br><br>**OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING AND AUTHORIZING THE IMPLEMENTATION OF A KEY EMPLOYEE RETENTION AND INCENTIVE PROGRAM** |

The United States Trustee, by and through counsel undersigned, hereby objects to the Debtors' Motion for Entry of Order Approving and Authorizing the Implementation of a Key Employee Retention and Incentive Program ("Retention Motion") and asks the Court to deny the relief requested, as set forth below. This Objection is supported by the following Memorandum of Points and Authorities.

**Memorandum of Points and Authorities**

These cases were filed September 16, 2013. The Debtor in Possession financing is capped at $1,250,000. Slightly more than 20% of this amount was earmarked by debtors in their Cash Flow Forecast earmarked for Management and Employee Retention. Despite this intent, Debtors filed the

Retention Motion essentially on the eve of sale of all its assets, at a time when there is little to be gained by provided additional bonus monies to management and employees.

Section 503(c) of the Bankruptcy Code established both a series of objective restrictions on the persons who may receive incentive or severance bonuses and a stringent test to be met before the debtors can make payment to its insiders. In these cases, the debtors have asked for approval a Proposed Retention Program whereby Tier I, described as Management Participants by the debtors, and Tier II, described as Rank and File Participants, are to be given certain monies allegedly to incentivize them.

## I. The Court Should Deny the Retention Motion as to Tier 1 Employees because Debtors have Failed to Meet their Burden of Proof Under Sections 363(b) and 503(c) of the Bankruptcy Code.

Debtors propose to pay a total of $91,075 to five employees described as Management Participants. Section 363(b) of the Bankruptcy Code authorizes the Debtors, after notice and a hearing, to use property outside of the ordinary course of business.[1] There must be some articulated business justification, other than appeasement of major creditors, for using selling or leasing property outside the ordinary course of business before the bankruptcy judge may order such disposition under 363(b). In re Lionel Corp., 722 F2d 1063, 1070 (2d. Cir. 1983). Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives or severance to insiders, including bonuses granted to other employees without factual and circumstantial justification. See In re Pilgrim's Pride Corp., 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) (Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case); In re Global Home Products, LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process.")

[1] It should be noted that the hearing on this important matter was not noticed. Rather, it was shoehorned on to the Court's setting of other items, within one week of the filing of the motion.

The section establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business or payments made on account of severance. In re Dana Corp., 351 B.R. 96, 100 (Bankr. S.D.N.Y. 2006 ("Dana I"); 11 U.S.C. § 503(c)(1). These amendments make it abundantly clear that if a proposed transfer falls within Section 503(c)(1) or (c)(2) (governing severance payments), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. Id. The effect of Section 503(c) was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. In re Mesa Air Group, 2010 WL 3810899 at *2, citing In re Global Home Prods. LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007).

The law is clear that the burden is on the debtors to either show that the proposed bonus plans comply with the requirements of § 503(c)(1) or that they are not disguised retention plans. Id. With respect to the Tier I employees, debtors have simply presented no evidence which establishes that these individuals are not insiders. Rather, they state only as follows: "(t)he debtors' most senior executives, including the Chief Executive Officer, the Chief Operating Officer, the Chief Financial Officer , and the General Counsel are not among the employees included in Tier 1." As well, they acknowledge that the Tier I employees "should not, but arguably could be, considered "insiders."[2] Neither the Imhoff Declaration nor the Hermann Declaration, which are attached as Exhibits to the Retention Motion, provide any further evidence or shed light on the status of the Management Participants. Three of the five titles of the recipients are provided, the other two are not. None of the recipients' positions are described. Ultimately, the test is not whether the most senior employees are excluded; the test is whether the proposed recipients themselves are insiders. The debtors have not met their burden to establish they are not and, accordingly, the retention plan, as concerns Tier 1, must be analyzed under §§ 503(c) (1) and (c)(2).

[2] The debtors also note, on page 10, that they "do not believe that any of the Management Participants is necessarily an insider, as that term is defined by Bankruptcy Code Section 101(31), even if one or more of the Management Participants is an insider, the Incentive and Retention Plan does not implicate either Bankruptcy Code section 503(c)(1) or (2)."

Under section 503(c)(1) payments are prohibited to insiders for the purpose of inducing such person to remain with the debtor's business absent a finding based on evidence in the record that 1) the transfer is essential to the retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation, 2) the services provided are essential to the survival of the business and 3) certain specific caps on the amounts are met. Because there is no evidence of either competing job offers or of the essential nature of the services provided by the Management Participants (indeed, their job titles and functions have not been revealed), the proposed plan must fail under § 503(c)(1).

With respect to § 503(c)(2), debtors suggest that the plan with respect to Management Participants is "better characterized as a short-term incentive plan, rather than a severance plan subject to the requirements" of this section. Although the debtors may find this to be a better characterization for the purposes of their motion, nothing in the record supports such a claim. It is the substance of how and why the proposed payments are made, not the label put on the plan, that is determinative. Mesa Air Group at *2. In this case, the payments are conditioned only upon the Court's approval of the sale of the debtors' assets. This benchmark, which notably does not require that the sale be closed, is illusory. Substantial progress has already been made towards achieving court approval of the sale; indeed, the auction will likely have occurred by the time this matter is heard. Further, it appears that court approval of even a fire sale of some of the debtors' assets would trigger the payments. Debtors have made no effort to meet the criteria of this section, short of stating that it doesn't apply.

Because the debtors have not met their burden to prove that the Management Participants are not insiders, payments to them ought not be analyzed pursuant to § 503(c)(3), which governs other transfers not made to insiders. However, even if § 503(c)(3) were applicable, this part of the plan must fail because it is not justified by the facts and the circumstances of the case, as described below.

**II. Should the Court Determine that the Plan is an Incentive Plan, the Motion should be Denied because the Debtors have failed to Prove that it is Justified by the Facts and Circumstances of the Case.**

Section 503(c)(3) requires that any transfer outside the ordinary course of business, which is not governed by § 503(c)(1), be justified under the "facts and circumstances" of the case. Courts have differed on what this phrase means. Some courts apply a "business judgment test, In re Dana Corp., 358 B.R. 567 (Bankr. S.D.N.Y. 2006)("Dana II"). Others apply a "business judgment plus" test. Pilgrim's Pride at 236. The Court need not determine which standard should be applied because even under the most lenient standard, the debtors have not demonstrated that the payments are justified to either Tier 1 or Tier 2 recipients under the facts and circumstances of the case. Courts generally consider the factors outlined in Dana II which include:

a. Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or in the case of a performance incentive, *is the plan calculated to achieve the desired performance?* (emphasis added)

b. Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

c. Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

d. Is the plan or proposal consistent with industry standards?

e. What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

f. Did the debtor receive independent counsel in performing due diligence and creating and authorizing the incentive compensation?

Dana II, 358 B.R. at 576-577.

In this case, the debtors have not established a reasonable relationship between the payments proposed and the results to be obtained. Substantial progress towards the sale has been made, a "stalking horse" has been identified, the auction sale is occurring; there is little, if anything, for the Tier II employees to do to facilitate the sale at this point. The sale doesn't need to close in order for the payments to be made; they are made upon mere approval of the auction sale. Presumably, the monies will be paid even if the sale never closes. Should the Court determine that the Management Participants are not insiders, the Retention Motion similarly fails as to them, as well.

As well, debtors have failed to establish that the proposed payments are reasonable in light of debtors' current economic situation. They propose to use 20% of their modest DIP facility to make these payments. It is not known, at this juncture, what delay might occur between the approval of the auction sale and the closing and whether these funds might be required to keep the debtors operational during that time. No operating reports have been filed because the case hasn't been pending long enough for one to be due. The debtors have provided no evidence regarding the reasonableness of these payments in light of their current financial status.

In light of the debtors' failure to prove it has met the first two factors outlined above, they have not established that these payments are justified under the facts and circumstances of these cases

**III. <u>Conclusion.</u>**

Debtors have failed to establish that the Tier I Management Participants are not insiders. Accordingly, the Key Employee Retention and Incentive Program as applies to Tier I is properly analyzed under §§503(c)(1) and (c)(2). Pursuant to these sections, the Program cannot be approved because the debtors haven't established that the transfer is essential because the recipients have bona fide job offers at the same or greater rate of compensation, that the services provided are essential or that certain caps have been met as required by § 503(c)(1). The debtors haven't met their burden of proof under § 503(c)(2) that the proposed payments aren't actually severance payments. And, although it seems evident that the

Tier II Rank and File Recipients are not insiders, debtors have not established that the payments to these employees are justified under the facts and circumstances of these cases. Accordingly, the United States Trustee asks that the Retention Motion be denied.

RESPECTFULLY SUBMITTED this 8TH day of October, 2013.

ILENE J. LASHINSKY
United States Trustee
District of Arizona

/s/ ECA #10755
Elizabeth C. Amorosi
Assistant United States Trustee

Copy of the foregoing transmitted via email this 9th day of October to:

Jared Parker
Parker Schwartz PC
jparker@psazlaw.com

David Simonds
Akin Gump Strauss Hauer & Field
dsimonds@akingump.com

Carolyn Johnson
Jennings Strouss & Salmon
cjjohnson@jsslaw.com