Carolyn J. Johnsen – 011894
cjjohnsen@jsslaw.com
Todd B. Tuggle – 020948
ttuggle@jsslaw.com
Kami M. Hoskins – 026271
khoskins@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
Facsimile: (602) 495-2696

*Proposed Attorneys for Official Committee
of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ELECTRIC TRANSPORTATION ENGINEERING CORPORATION (d/b/a ECOTALITY NORTH AMERICA), *et al.*,[1]<br><br>Debtors. | Chapter 11 Proceedings<br><br>Jointly Administered<br><br>No. 2:13-bk-16126-RJH<br>    2:13-bk-16127-RJH<br>    2:13-bk-16128-RJH<br>    2:13-bk-16129-RJH<br>    2:13-bk-16130-RJH<br>    2:13-bk-16131-RJH<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING AND AUTHORIZING THE IMPLEMENTATION OF A KEY EMPLOYEE RETENTION AND INCENTIVE PROGRAM** |

---

[1] The Debtors in these jointly administered Chapter 11 cases and the last four digits of their respective Employer Identification Numbers are: (i) ECOtality, Inc. (5422); (ii) Electric Transportation Engineering Corporation (4755); (iii) ECOtality Stores, Inc. (2643); (iv) ETEC North, LLC (n/a); (v) The Clarity Group, Inc. (8832); and (vi) G.H.V. Refrigeration, Inc. (4512).

**Hearing Date: October 9, 2013**
**Hearing Time: 1:30 p.m.**

The Official Committee of Unsecured Creditors (the "Committee") files this objection to the *Debtors' Motion for Entry of an Order Approving and Authorizing the Implementation of a Key Employee Retention and Incentive Program* [Dkt. #111] ("Motion"). In their Motion, the Debtors seek to pay approximately $230,000.00 in the aggregate to 43 current employees in an effort to entice them to continue working while the Debtors pursue a sale of their assets. This proposal is not even within the realm of reasonableness given the fact that the sale is scheduled to be approved on October 9, 2013 and consummated on October 11, 2013. The Debtors have offered no justification for such a huge expenditure of cash bonuses (employees are still being paid) when cash needs to be spent on necessary operations and administrative expenses.

I. **INTRODUCTION**.

These cases were filed on September 16, 2013. Despite the Debtors' concern that several employees have resigned or are on the brink, most of the so-called defections occurred pre-petition and only four employees have resigned post-filing. The Motion was not filed until October 2, 2013, one week prior to the scheduled auction on October 8, 2013 and the sale hearing on October 9, 2013, and the Debtors did not seek emergency relief. Certainly, this is evidence that the woeful "max exodus" of employees is not realistic. A hearing on the Motion has now been scheduled for October 9, 2013.

It appears at this juncture, that a sale of Debtors' assets will occur and of course, the purchaser may or may not hire existing employees. The Debtors state that retaining the employees makes the employees a "potential asset attractive to a purchaser," and therefore, these payments should be made. This argument makes no

sense. The hiring determinations will be made in a week. Why pay these huge amounts that are really bonuses for past work, not for future work?

The Debtors have offered no evidence that any of the employees they are seeking to pay have sought and obtained other work or that there is an imminent threat of a shut-down if payments are not made on the same day of the sale. It is irrational to believe that either will occur in the next few days. Moreover, the Debtors have failed to identify any value for the estates that will be obtained if the payments are made. In fact, it appears the Debtors wish to pay bonuses to employees for merely doing their jobs while the Debtors conduct a sale of their assets. Such retention plans are inappropriate under Bankruptcy Code § 503(c), and the Motion must be denied.

## II. LEGAL ARGUMENT.

### A. The Debtors Failed to Satisfy Their Burden Under Section 503(c)(1).

A debtor's ability to implement a key employee incentive program is governed by Bankruptcy Code § 503(c). Court will consider both the circumstances underlying the proposal of employee compensation packages as well as the structure of those packages. *See In re Borders Group, Inc.*, 453 B.R. 459, 470 (Bankr. S.D. N.Y. 2011) (citing *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D. N.Y. 2006)). If the court determines that an employee is an insider and the program is "retentive," then the debtor must satisfy the requirements under Section 503(c)(1).[2] *See In re*

---

[2] 11 U.S.C. § 503(c)(1) states:

Notwithstanding subsection (b), there shall neither be allowed, nor paid—
(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
(B) the services provided by the person are essential to the survival of the business; and
(C) either—
(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is

*Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D. N.Y. 2012). To avoid the strict requirements under Section 503(c)(1), a debtor must show that the proposed transfers are not to insiders of the debtor, or if the proposed recipients are insiders, that the transfer are not being made to retain those insiders. *See id.* Court generally disfavor a debtor's attempt to characterize prohibited retention programs as "incentive programs" as an end-run around Section 503(c)(1). *See In re Borders Group, Inc.*, 453 B.R. at 470.

Here, the Debtors offer a paucity of information regarding the roles and responsibilities for the affected employees. The Debtors concede, however, that at least some of the employees to be compensated under their Incentive and Retention Plan could be considered insiders of the Debtors. *See* Motion at p. 3. Therefore, for all insider employees, the Debtors must satisfy the requirements under Section 503(c)(1).

Multiple bankruptcy courts have denied a debtor's request to approve an employee incentive plan because the debtor failed to satisfy its burden under Section 503(c)(1). *See In re Hawker Beechcraft, Inc.*, 479 B.R. 308 (Bankr. S.D. N.Y. 2012); *see also In re Residential Capital,* 478 B.R. at 157-58. In both cases, the courts concluded that the identified employees would be compensated improperly under the proposed compensation plans for merely remaining employed with the debtors and declined to approve the programs. *See Hawker Beechcraft*, 479 B.R. at 315; *see also*

---

not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii)if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred.

*Residential Capital*, 478 B.R. at 172.

The structure of the proposed employee compensation plan in *Residential Capital* is strikingly similar to the Incentive and Retention Plan offered by the Debtors here. In that case, the court stated, "the only thing that KEIP Participants have to do for their Awards to vest is remain with the Debtors' business until the Closing of two Asset Sales that were substantially negotiated pre-petition." *See* 478 B.R. at 172. The court concluded that absent "additional challenging performance metrics," the largest component of the debtor's plan was "primarily retentive," and the debtor was not entitled to invoke the less stringent requirements of Section 503(c)(3). *See id*. The court stated, "to avoid the stringent requirements of section 503(c)(1), the Debtors must more closely link vesting of the KEIP Awards to metrics that are directly tied to challenging financial and operational goals for the businesses tailored to the facts and circumstances in this case." *See id*.

Similarly, in *In re Borders Group, Inc*., the debtors proffered three iterations of their key employee incentive program before the court approved the program. *See* 453 B.R. at 466. Initially, the debtors sought approval of a program that "was tied only to the achievement of plan confirmation or a section 363 sale going concern sale…" *See id*. The debtors revised the program to provide for bonuses based on the timing of a sale and for bonuses to senior managers only if certain distributions were made to unsecured creditors. *See id*. The court recognized that without the additional incentives that linked the bonuses to specific financial milestones for the company, the plans were impermissible retention plans, and the debtors could not have avoided the stringent requirements under Section 503(c)(1). *See id*. at 471-72.

Likewise in this case, the Debtors have failed to link any actual business goals to the payment of the employee bonuses. The Debtors state, "… all payments to be made to the Management Participates under the Incentive and Retention Plan are

5

conditioned upon the approval of a sale of assets…If no such sale is approved, the Management Participants will not receive any payment under the Incentive and Retention Plan." *See* Motion at p. 4. The conditions for the payments to the Debtors' "rank and file" employees are even less stringent. The Debtors state, "payments to the Rank and File Participants … will be paid only to those Rank and File Participants who remain employed by the Debtors and otherwise continue discharging their respective duties… payments to the Rank and File Participants will not be dependent upon the completion of a court-approved sale." *See id*. at p. 5.

Therefore, despite the Debtors suggestion to the contrary, the Incentive and Retention plan is an impermissible retention plan. The Court should not be persuaded by the Debtors' attempt to "dress up" their impermissible retention plan as an incentive plan. *See Hawker Beechcraft*, 479 B.R. at 313 ("If [a bonus proposal] walks like a duck (KERP),[3] and quacks like a duck (KERP), it's a duck (KERP)") (citations omitted). Accordingly, like the debtors in *Residential Capital* and *Hawker Beechcraft*, the Debtors have failed to show that they are entitled to avoid the heightened requirements under Section 503(c)(1). Moreover, the Debtors have failed to show they have met the requirements under Section 503(c)(1), and the Motion must be denied.

### B. The Debtors Failed to Satisfy Their Burden Under Section 503(c)(3).

Not only did the Debtors fail to meet their burden under Section 503(c)(1), they have also failed to prove they have exercised their valid business judgment in proposing the Incentive and Retention Plan as required under Section 503(c)(3). Section 503(c)(3) prohibits:

> other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of,

---

[3] KERP is an acronym for "Key Employee Retention Program."

officers, managers, or consultants hired after the date of the filing of the petition.

Courts have held that the "facts and circumstances" language of Section 503(c)(3) is the same as the business judgment standard under Bankruptcy Code § 363(b). *See In re Borders Group*, 453 B.R. at 473. Bankruptcy courts consider several factors when determining if a debtor's compensation program structure and development process satisfy the business judgment test. *See id.* at 474. Those factors are:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?; and

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*See id.* (citations omitted). Here, Debtors do not argue that the Incentive and Retention Plan is an ordinary-course transaction. Therefore, the Section 503(c)(3) analysis applies with respect to all non-insider employees the Debtors propose to pay under the plan.

The Debtors fail to address adequately any of the above-stated factors. It is not at all clear that the Incentive and Retention Plan will have any effect in this case. The Debtors concede they have lost multiple employees, and there is no evidence that

the targeted employees will stay until the propose sale is consummated. In fact, the Debtors make no such affirmative statements. Instead, they only offer conjecture and hope that if the Court approves the Incentive and Retention Plan, certain employees may continue to work for the Debtors for a few additional days. Additionally, the Debtors do not discuss adequately if the Incentive and Retention Plan is fair and reasonable, discriminates unfairly, or is proposed consistent with industry standards.

Further, the Debtors do not adequately justify the proposed costs involved. The payments requested in the Motion are not a reasonable exercise of the Debtors' business judgment. Instead, the opposite is true. According to the Budget attached to the debtor-in-possession financing order, cash over this sale time-period is extremely limited. There are bound to be unforeseen expenses connected to the sale, and in fact, the sale date may have to be postponed for a few days to allow additional bids. Cash may be required to keep the company operating for a short period of time, and yet the Debtors insist on what amounts to a pure bonus retention program.

In sum, the benefits of the Incentive and Retention Plan are far from clear, and the costs are too high. The Debtors have failed to show they have exercised their valid business judgment in proposing the Incentive and Retention Plan, and the Motion must be denied.

WHEREFORE, the Committee respectfully requests the Court enter an Order: (i) denying the Motion with prejudice; and (ii) granting the Committee such other and further relief as is just and proper under the facts and circumstances.

DATED: October 8, 2013.

                JENNINGS, STROUSS & SALMON, P.L.C.


                By: /s/ Carolyn J. Johnsen
                   Carolyn J. Johnsen
                   Todd B. Tuggle
                   Kami M. Hoskins

*Proposed Attorneys for the Official Committee of Unsecured Creditors*

COPIES of the foregoing delivered this 8th day of October, 2013 via the Court's CM/ECF system on all parties requesting notice.

COPIES of the foregoing Emailed this 8th day of October, 2013 to the following:

Jared G. Parker, Esq.
PARKER SCHWARTZ, PLLC
7310 N 16th St. Ste. 330
Phoenix, AZ 85020
jparker@psazlaw.com
*Attorneys for Debtors and Debtors in Possession*
Attorneys for NISSAN NORTH AMERICA, INC.

Charles R. Gibbs, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue
Dallas, TX 75201
cgibbs@akingump.com
*Attorneys for Debtors and Debtors in Possession*

David P. Simonds, Esq.
Arun Kurichety, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East, Ste. 2400
Los Angeles, CA 90067
dsimonds@akingump.com
akurichety@akingump.com
*Attorneys for Debtors and Debtors in Possession*

Evan Jon Gershbein, Esq.
KURTZMAN CARSON CONSULTANTS
2335 Alaska Ave
El Segundo, CA 90245
egershbein@kccllc.com

| | |
|---|---|
| 1 | *Attorneys for Kurtzman Carson Consultant* |
| 2 | |
| | Elizabeth C. Amorosi, Esq. |
| 3 | OFFICE OF THE U.S. TRUSTEE |
| | 230 N. 1ST Avenue, Suite 204 |
| 4 | Phoenix, AZ 85003 |
| 5 | Elizabeth.C.Amorosi@usdoj.gov |
| | *Attorney for U.S. TRUSTEE* |
| 6 | |
| 7 | OFFICE OF THE U.S. TRUSTEE |
| | 230 North First Avenue |
| 8 | Suite 204 |
| | Phoenix, AZ 85003 |
| 9 | USTPRegion14.PX.ECF@USDOJ.GOV |
| 10 | |
| | Michael E. Baum, Esq. |
| 11 | Brendan G. Best, Esq. |
| | SCHAFER AND WEINER, PLLC |
| 12 | 40950 Woodward Ave., Ste 100 |
| 13 | Bloomfield Hills, MI 48304 |
| | mbaum@schaferandweiner.com |
| 14 | BBest@schaferandweiner.com |
| | *Attorneys for Car Charging Group* |
| 15 | |
| 16 | Ronald Eric Gold, Esq. |
| | FROST BROWN TODD LLC |
| 17 | 3300 GREAT AMERICAN TOWER |
| | 301 E Fourth Street |
| 18 | Cincinnati, OH 45202 |
| 19 | rgold@fbtlaw.com |
| | *Attorneys for Macy's West Stores, Inc.* |
| 20 | |
| 21 | John A. Harris, Esq. |
| | QUARLES & BRADY LLP |
| 22 | One Renaissance Square |
| | Two N. Central Avenue |
| 23 | Phoenix, AZ 85004-2391 |
| 24 | john.harris@quarles.com |
| | *Attorneys for NISSAN NORTH AMERICA, INC.* |
| 25 | |
| | Lori A. Lewis, Esq. |
| 26 | MARICOPA COUNTY ATTORNEY'S OFFICE |

| | |
|---|---|
| 1 | CIVIL SERVICES DIVISION |
| 2 | 222 N. Central Avenue, Suite 1100 |
| | LewisL01@mcao.maricopa.gov |
| 3 | *Attorneys for Maricopa County Treasurer* |
| 4 | |
| | Richard M. Lorenzen, Esq. |
| 5 | PERKINS COIE LLP |
| | 2901 North Central Avenue, Suite 2000 |
| 6 | Phoenix, AZ 85012-2788 |
| 7 | RLorenzen@perkinscoie.com |
| | *Attorneys for Portland General Electric* |
| 8 | |
| | Richard B. Murphy, Esq. |
| 9 | MURPHY KARBER PLC |
| | 2828 N Central Ave #1110 |
| 10 | Phoenix, AZ 85004 |
| 11 | rich@mkcfirm.com |
| | *Attorneys for Specified Electrical Contractors, Inc.* |
| 12 | |
| 13 | Douglas R. Pahl, Esq. |
| | PERKINS COIE LLP |
| 14 | 1120 N.W. Couch St., 10th Floor |
| | Portland, OR 97209 |
| 15 | DPahl@perkinscoie.com |
| 16 | *Attorneys for Portland General Electric* |
| 17 | John D. Parker, II, Esq. |
| | PARKER LAW FIRM, PLC |
| 18 | c/o Parker Law Firm, PLC |
| 19 | PO Box 63098 |
| | Phoenix, AZ 85082-3098 |
| 20 | jparker@ptlaw.net |
| 21 | *Attorneys for GMA Manufacturing, LLC* |
| 22 | Victor Weitao Zhao, Esq. |
| | US DEPARTMENT OF JUSTICE |
| 23 | 1100 L Street NW, Room 10044 |
| 24 | Washington, DC 20005 |
| | victor.w.zhao@usdoj.gov |
| 25 | |
| 26 | /s/ Kami Hoskins |