DAVID J. WOODWARD
**FTI CONSULTING, INC.**
888 West Big Beaver Road, Suite 350
Troy, MI 48084
Telephone: (248) 764-1408

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ELECTRIC TRANSPORTATION ENGINEERING CORPORATION (d/b/a ECOTALITY NORTH AMERICA), et *al.*,[1]<br><br>Debtors. | Chapter 11 Proceedings<br>(Jointly Administered)<br>Case No.: 2:13-BK- 16126-RJH<br><br>**FIRST INTERIM APPLICATION OF FTI CONSULTING, INC., AS CRISIS MANAGER AND FINANCIAL ADVISOR FOR DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES** |

**APPLICATION PERIOD**: 9/16/2013 – 10/31/13
**APPLICATION NUMBER**: First Interim Application

<u>**CRISIS MANAGEMENT**</u>
**TOTAL FEES REQUESTED**: $165,739.00
**TOTAL EXPENSES REQUESTED**: $   5,559.33
**TOTAL APPLICATION REQUESTED**: **$171,298.33**

<u>**FINANCIAL ADVISOR**</u>
**TOTAL FEES REQUESTED**: $500,000.00
**TOTAL EXPENSES REQUESTED**: $   8,390.21
**TOTAL APPLICATION REQUESTED**: **$508,390.21**

**TOTAL APPLICATION REQUESTED:** $679,688.54
**LESS: APPLIED CASH ON ACCOUNT**: ($245,011.81)
**TOTAL NET CASH DUE** : **$434,676.73**

---

[1] The Debtors in these jointly administered chapter 11 cases and the last four digits of their respective Employer Identification Numbers are: (i) ECOtality, Inc. (5422); (ii) Electric Transportation Engineering Corporation (4755); (iii) ECOtality Stores, Inc. (2643); (iv) ETEC North, LLC (n/a); (v) The Clarity Group, Inc. (8832); and (vi) G.H.V. Refrigeration, Inc. (4512).

*1*

## I. INTRODUCTION

1.      FTI Consulting, Inc. ("FTI"), as crisis manager and financial advisors for the above-captioned debtors and debtors in possession (collectively the "Debtors"), hereby submits its First Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses for Services Rendered and Expenses Incurred as Crisis Manager and Financial Advisor for the Debtors (the "Application") for the period from September 16, 2013 through October 31, 2013 (the "Application Period").  This Application is made in accordance with and pursuant to 11 U.S.C. §§ 330(a), 331, 503(a) and (b) and Bankruptcy Rule 2016 and 2002(a)(6).

2.      During the Application Period, FTI provided crisis and turnaround management services under a fixed fee arrangement.  In addition, FTI, based on additional resources that the Debtors required, provided certain limited additional crisis management services on an hourly basis.  The hourly crisis management personnel provided to the Debtors represented a more cost effective approach to address the additional necessary services. FTI's hourly crisis management personnel spent 87.9 hours assisting the Debtors primarily with respect to the preparation of the Debtors' Statement of Financial Affairs and Schedules of Assets and Liabilities, as well as developing strategies and formulating plans related to employee retention issues and assisting in the development of Debtor wind down plans.  Based upon the fixed fee arrangement and FTI's hourly rates in effect at the time services were rendered, FTI is seeking fees for crisis and turnaround management services for the Application Period in the amount of $165,739.00.  During the Application Period, FTI also provided financial advisory services to the Debtors related to sale of substantially all of the Debtors' assets, and is seeking payment of the monthly Financial Advisory Fee and the Transaction Fee (as defined in FTI's engagement letter as attached to Docket #103) of $500,000.00 [1].  During the Application Period and in connection with services rendered, FTI incurred out-of-pocket expenses for which FTI is seeking reimbursement in the amount of $13,949.54.  The total compensation and expense

---

[1] Pursuant to the engagement letter, Company is to pay FTI in cash at closing a fee of 1.5% of the aggregate value of each transaction, subject to a minimum aggregate fee of $500,000.00 with any monthly, non-refundable fees paid for the Financial Advisory Services credited against any Transaction Fee.  The Debtors paid FTI a monthly non-refundable fee of $100,000.00 for the first month and as such FTI is owed the minimum aggregate fee of $500,000.00 less the monthly Financial Advisory fee of $100,000.00.  No additional monthly financial advisory services fees have been paid.

reimbursement requested by FTI for the Application Period is $679,688.54. In support of its Application, FTI submits its billing and expense detail for the Application Period, attached hereto collectively as Exhibits "A" through "D" and incorporated herein by reference.

## II. BACKGROUND

3. On September 16, 2013 (the "Petition Date"), the Debtors filed with this Court their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' Chapter 11 Cases are being jointly administered and on September 24, 2013, the Office of the United States Trustee for Region 14 (the "U.S. Trustee") appointed a committee of unsecured creditors under Bankruptcy Code section 1102. *See Dkt. #876*. No trustee or examiner has been appointed in these cases.

4. On September 16, 2013, the Debtors and FTI entered into a letter of engagement to engage FTI to provide crisis management, turnaround advisory services and financial advisory services. The Scope of Services (as defined in the engagement letter) agreed to in the letter are incorporated herein into Section III, Summary of Professional Services Performed by FTI by Project Code.

5. On September 30, 2013, the Debtors filed the application for retention of FTI as crisis manager and financial advisor to the Debtors (Doc 103).

6. On October 9, 2013, by order of this Court, the Employment Application of FTI as crisis manager and financial advisor for the Debtors was approved *nunc pro tunc* to the petition date (Doc 205).

7. This is FTI's first interim application for compensation, which covers the period of September 16, 2013 through October 31, 2013. During this period, FTI provided (1) crisis management and turnaround advisory services under a fixed fee arrangement totaling $112,500.00[1]; (2) hourly crisis management and turnaround advisory services totaling

---

[1] Crisis management and turnaround advisory services fixed fee reflects $75,000.00 monthly fee for the time an effort that David J. Woodward spent on this engagement. The fixed fee includes $37,500 for services rendered from September 16, 2013 through September 30, 2013 and $75,000.00 for services rendered from October 1, 2013 through October 31, 2013. The monthly crisis management and turnaround advisory services fee was discontinued on October 31, 2013.

$53,239.00; and (3) financial advisory services totaling $500,000.00[1]. As such, through this Application, FTI seeks payment of $665,739.00 on account of fees and reimbursement of $13,949.54 in expenses, for a total aggregate amount of $679,688.54. A summary schedule showing the hours worked and the associated fee for each hourly crisis management professional is included as Exhibit "A." The rates were in accordance with the engagement letter, the order approving such letter and reflect FTI's current personnel rates.

8. Prior to the Petition Date, and pursuant to a prior engagement letter as disclosed in the retention application, the Debtors paid FTI a total of $245,000.00 of funds which were then continued to be held "on account" (the "Initial Cash on Account" to be applied to FTI's professional fees, charges and disbursements for the Services under the Engagement Letter). For the period September 16, 2013 through October 31, 2013, FTI is requesting payment for 100% of fees and expenses for a total amount of $165,739.00 for crisis management, turnaround advisory services, $500,000.00 for financial advisory services and $13,949.54 for reimbursement of out of pocket expenses before application of the "Initial Cash on Account".

9. Except as FTI may be entitled to receive compensation herein, FTI has no arrangements with any other parties for compensation for the services rendered, nor has FTI received any funds from any parties for the services rendered. Further, FTI has not made any arrangement to share any compensation awarded or received other than the normal division of fees that, as a matter of course, occurs between members of FTI. The members of FTI are disinterested persons as defined in Bankruptcy Code section 101(14) and do not hold or represent any interest adverse to the Estates.

### III. SUMMARY OF PROFESSIONAL SERVICES PERFORMED BY FTI

10. **Financial Advisory Services.** During the Application Period, FTI also provided financial advisory services to the Debtors related to the sale of substantially all of the

---

[1] For each and every transaction completed by FTI, a cash fee at closing equal to 1.5% of the aggregate value (as defined in the Engagement Letter) of each transaction, subject to a minimum aggregate fee of $500,00, with any monthly, non-refundable fees paid for the Financial Advisory Services credited against any Transaction Fee.

Debtors' assets. These services included, but are not limited to: assisting in the preparation of sale process materials, assisting the Debtors to identify, screen, and assess the merits of interested parties, contacting and distributing a teaser to over (350) parties, assisting Debtors in development and population of a data room, directing and coordinating the due diligence process with (30) parties, evaluating proposals received regarding potential transactions, assisting the Debtors on negotiations in connection with proposals received, assisting the Debtors and counsel in negotiation of a stalking horse bid and related definitive agreements, assisting the Debtors in conducting the sale auction, evaluation of various bids and ultimately, the selection of the winning bids and the negotiation of three definitive agreements. It should be noted that the sale process was accomplished on an expedited basis, required significant effort due to timing, limited Debtor due diligence resources and multiple buyers interested in three discrete business assets. The results of these efforts were three successful sale transactions that maximized value to the Debtors.

11. **Fixed Fee Crisis Management Services.** During the Application Period, FTI provided services under a fixed fee arrangement. These services included, but are not limited to: with counsel, leading negotiations with lenders, governmental agencies, contract counterparties and other parties to facilitate restructuring and sale efforts, advising the Debtors regarding business, liquidity and operational issues throughout the bankruptcy proceedings (including before and after the sale transactions), coordinating efforts to facilitate the Debtors' restructuring efforts, providing updates to the board of directors, assisting the Debtors with the development of communication programs for employees, vendors, customers, lenders and other stakeholders, and review and supervise the preparation of schedules of assets and liabilities, statement of financial affairs.[1]

12. **Hourly Services.** Pursuant to the U.S. Trustee Guidelines, FTI has established several different project billing categories for these chapter 11 cases. The summaries attempt to highlight the key tasks undertaken and the results thereof. The summaries of professional

---

[1] Total fixed fee crisis management services billed at standard hourly rates would exceed the $75,000 fixed fee per month.

services performed by FTI hourly crisis management and turnaround professionals are set forth by project billing category. The persons providing services on these matters and the associated fees in each of the categories below are summarized in Exhibit "B" with supporting time detail provided by each individual in Exhibit "C".

FTI is aware that some of the time spent in meetings, responding to data requests, review information related to the Debtors and organizing support documentation could properly be categorized under several codes as the services, meetings and documents were for multiple purposes. As such, the items below may have conferred a benefit to more than one project billing category.

A. <u>Analysis of Bankruptcy Motions/Orders (01)</u>. FTI expended 9.1 hours in this category for a total charge of $5,195.00. During the Application Period, FTI assisted the Debtors and Debtors' counsel with several key bankruptcy reporting requirements. During the period prior to the petition filing, FTI assisted with the gathering of data and creation of various analyses to assist with drafting motions. FTI also gathered information and prepared the initial creditor matrix and reviewed various NOL tax analyses prepared by management.

B. <u>Analysis of Claims and Liabilities (02)</u>. FTI expended 5.5 hours in this category for a total charge of $2,750.00. During the Application Period, FTI assisted the Debtors and Debtors' counsel reviewing executory contracts, gathering information related to contract cure amounts and preparing the contract cure schedule for over 800 executory contracts in a timely fashion necessary to meet the requirements of the sales procedures order.

C. <u>Analysis of SOFAs and SOALs (03)</u>. FTI expended 40.3 hours in this category for a total charge of $20,150.00. During the Application Period, FTI was requested to provide additional services under the engagement letter and assisted the Debtors and Debtors' counsel with several key bankruptcy reporting requirements. FTI consultants also assisted the Company with drafting and reviewing the Schedules of Assets and Liabilities and the Statement of Financial Affairs. As necessary to execute the sales

procedures, FTI expended significant effort to prepare and file the Schedules of Assets and Liabilities and the Statement of Financial Affairs for each of the six Debtor entities the within the two weeks of the Petition Date.

D. <u>Analyze/Review Employee Reduction Initiative (04)</u>. FTI expended 5.8 hours in this category for a total charge of $5,191.00. The services performed in this category generally included, but were not limited to: conducting various conference calls with the Debtors, counsel and other interested parties regarding the employee reduction initiatives; assisted the Debtors in establishing an employee retention plan related to certain key personnel and the Debtors' rank and file employees.

E. <u>Asset Sales (05)</u>. FTI expended 2.1 hours in this category for a total charge of $1,050.00. During the Application Period, FTI managed the Debtors' extensive sales process for substantially all of the assets available for sale by the Debtors. Tasks included the following: assistance related to potential buyers in connection with their due diligence efforts; review of company data files prior to transmission to interested parties; and communication of information through reports and email correspondence to Debtors' board of directors, management and counsel.

F. <u>Case Management (06)</u>. FTI expended 4.5 hours in this category for a total charge of $3,909.00. Tasks in this category are wide ranging, and generally include a broad range of services which do not neatly fit under the other task billing categories established by FTI. Thus, while they all fall under the heading of Case Management for purposes of this fee application many of the services classified here are truly substantive matters. The services rendered during the Application Period in this category include, but are not limited, to getting up to speed on the background and case issues, participating in various conferences among Debtors' professionals and Debtors' management, preparing and maintaining FTI's work plan, and reviewing case filings that impacted the Debtors and respond to inquiries and other general case administration matters.

This category includes the preparation of FTI's retention application and declaration in support thereof and research of FTI's relationships with other parties in these cases to

ensure that FTI's disinterestedness. The foregoing services were necessary to fulfill FTI's role as crisis manager and financial advisor to the Debtors. In the execution of these services FTI complied with the requirements of the Bankruptcy Code, US Trustee requirements and orders of this Court.

G. <u>Liquidity, Cash Management and Financing Matters (07)</u>. FTI expended 1.2 hours in this category for a total charge of $955.50. As crisis manager to the Debtors, FTI was heavily involved in the management of activities related to the sourcing and maintenance of the Debtor-in-Possession financing to allow the Debtors to continue operations. As such, FTI reviewed and monitored the Debtors' daily cash reports. During the Application Period, FTI managed the Debtors' DIP loan process which included the review of DIP loan documents and communications and pleadings regarding the DIP loan, assisted the Debtors' with DIP draw requests and negotiations with the DIP lender, updated the cash flow budget as necessary, participated in discussions with various lenders regarding DIP financing and provided information through reports, email correspondence and discussions to the Debtors' board of directors, management and other parties in interest.

H. <u>Prepare for and Attend Court Hearings (08)</u>. FTI expended 2.0 hours in this category for a total charge of $1,790.00. The services rendered during the Application Period in this category include, preparation for, attendance at and follow-up discussions for Court hearings not otherwise included in a specific project code.

I. <u>Wind Down Monitoring (9)</u>. FTI expended 17.4 hours in this category for a total charge of $12,248.50. During the Application Period, FTI personnel assisted management with the development of a wind-down plan. FTI held conferences with management, counsel to the Creditors Committee and Debtors' counsel regarding the wind-down plan. FTI also reviewed payment information during the 90 days prior to the petition date for preference analysis planning.

J. <u>Costs.</u> Costs for which FTI seeks reimbursement total $13,949.54. A majority of the costs incurred are attributable to travel-related expenses related to properly

advising the Debtors during the bankruptcy cases. FTI has attempted to ensure that travel-related costs were, and are, kept at a minimum and represent costs that are customarily charged to bankruptcy and non-bankruptcy clients of FTI as set forth in the engagement letter and the retention application. The amount FTI has disbursed for actual and necessary expenses in connection with the Debtors is itemized in Exhibit "D."

### IV. EVALUATING STANDARDS

13. In accordance with Bankruptcy Code section 330, this amount was calculated using the hourly rates for the consultants involved. In addition, because provisions of section 330 (a) place a premium on the timeliness of administration of the cases, compensable services must be "performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed." 11 U.S.C. § 330(a)(3)(A).

14. For the time period September 16, 2013 through October 31, 2013, FTI has advised the Debtors in connection with financial matters in these cases on an ongoing and as-needed basis and has performed extensive work preparing documents submitted to the Court and others, as well as participating in conferences and meetings for and on behalf of the Debtors. FTI has performed numerous consulting services for and on behalf of the Debtors which services are described above and which are itemized in Exhibit B attached hereto. FTI maintains daily time records reflecting the actual and necessary time expended in the performance of the additional hourly services for which compensation is sought.

15. The results FTI obtained within the Application Period demonstrate that FTI:

a) Used the skill required to perform the necessary accounting and financial consulting services.

b) Provided services necessary to the administration of these cases for the benefit of the Debtors and their estates; and

      c)       Performed the services within a reasonable amount of time commensurate with the complexity, importance and nature of each task.

## V.     COMPLIANCE WITH SECTION 504 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016

16.     FTI has not entered into any arrangement or agreement with any person or entity with respect to the sharing of fees and expenses for which FTI is seeking compensation and reimbursement as set forth in this Application, except as permitted by Bankruptcy Code section 504(b)(1).

## VI. CONCLUSION

17. WHEREFORE, based upon the foregoing, FTI respectfully requests that this Court enter an Order:

18. Approving the First Interim Application of FTI Consulting, Inc. as Crisis Manager and Financial Advisor to the Debtors, for Allowance of Compensation and Reimbursement of Expenses, and allowing FTI fees in the sum of *$665,739.00* and 100% of costs in the sum of *$13,949.54* in their entirety;

19. Authorizing and directing payment of such approved fees and costs by the Debtors from any and all available funds; and

20. Such other and further relief as this Court deems just and proper.

Dated this 26th day of November, 2013.

                                                FTI CONSULTING, INC.

                                                By /s/ David J. Woodward
                                                     David J. Woodward
                                                     Senior Managing Director
                                                     888 West Big Beaver Road
                                                     Suite 350
                                                     Troy, Michigan 48084

                                                *Crisis Manager and Financial Advisor to the Debtors*