UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| ELECTRIC TRANSPORTATION ENGINEERING CORPORATION (d/b/a ECOTALITY NORTH AMERICA), *et al.*[1] | Case No. 2:13-BK-16126 (MCW) |
| Debtors. | Jointly Administered |

This filing applies to:

■  All Debtors
  Specified Debtors

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Charles R. Gibbs (admitted *pro hac vice*)
1700 Pacific Avenue
Dallas, Texas 75201
Telephone:     (214) 969-2800
Facsimile:     (214) 969-4343

-and-

David P. Simonds (admitted *pro hac vice*)
Arun Kurichety (admitted *pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:     (310) 229-1000
Facsimile:     (310) 229-1001

*Co-Counsel to the Debtors and Debtors in Possession*

Dated:  October 28, 2014

**PARKER SCHWARTZ, PLLC**
Jared G. Parker
7310 N. 16th St., Suite 330
Phoenix, Arizona 85020
Telephone:     (602) 282-0476
Facsimile:     (602) 282-0478

---

[1]  The Debtors in these jointly administered chapter 11 cases and the last four digits of their respective Employer Identification Numbers are:  (i) ECOtality, Inc. (5422); (ii) Electric Transportation Engineering Corporation (4755); (iii) ECOtality Stores, Inc. (2643); (iv) ETEC North, LLC (n/a); (v) The Clarity Group, Inc. (8832); and (vi) G.H.V. Refrigeration, Inc. (4512).  The Debtors' service address is ECOtality, Inc., P.O. Box 20336, Phoenix, AZ 85036-0336.

**Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest and this Plan is subject to approval by the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

Case 2:13-bk-16126-MCW    Doc 693    Filed 10/28/14    Entered 10/28/14 18:13:44    Desc
Main Document    Page 2 of 49

# TABLE OF CONTENTS

**Page**

ARTICLE I. – DEFINITIONS AND RULES OF INTERPRETATION ...................................... 1

    A.    Rules of Interpretation and Governing Law. ......................................................... 1
    B.    Definitions .................................................................................................................. 2

ARTICLE II. – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.... 11

    A.    Unclassified Claims ................................................................................................. 11
        2.1    Administrative Claims ................................................................................. 11
        2.2    Compensation Claims .................................................................................. 11
        2.3    Substantial Contribution Compensation and Expenses ........................... 12
        2.4    Priority Tax Claims ...................................................................................... 12

    B.    General Rules ............................................................................................................ 12
        2.5    Classification ................................................................................................. 12

    C.    Summary of Classification of Claims and Equity Interests ................................. 13

    D.    Classified Claims and Equity Interests ................................................................. 13
        2.6    Class 1 – Secured Claims ............................................................................. 13
        2.7    Class 2 – Priority Non-Tax Claims ............................................................. 13
        2.8    Class 3 – General Unsecured Claims .......................................................... 14
        2.9    Class 4 – Intercompany Claims ................................................................... 14
        2.10   Class 5 – Section 510(b) Claims .................................................................. 14
        2.11   Class 6 – Equity Interests ............................................................................ 14

    E.    Additional Provisions Regarding Unimpaired Claims and
        Subordinated Claims ............................................................................................... 15
        2.12   Special Provision Regarding Unimpaired Claims ..................................... 15
        2.13   Subordinated Claims .................................................................................... 15

ARTICLE III. – ACCEPTANCE ...................................................................................... 15

        3.1    Elimination of Vacant Classes .................................................................... 15
        3.2    Cramdown ..................................................................................................... 15

ARTICLE IV. – MEANS FOR IMPLEMENTATION OF PLAN ......................................... 15

        4.1    Liquidating Trust ......................................................................................... 15
        4.2    Liquidating Trustee ...................................................................................... 16
        4.3    Stock Trust .................................................................................................... 17
        4.4    Stock Trustee ................................................................................................ 17
        4.5    New Board. .................................................................................................... 18
        4.6    Cancellation of Notes, Instruments, and Outstanding Equity Interests. ... 18
        4.7    Cancellation of Liens ................................................................................... 18

4.8     Exemption from Certain Transfer Taxes and Recording Fees.................. 18
4.9     No Further Approvals ..................................................................... 19
4.10   Dissolution of Committee ............................................................. 19
4.11   Pre-Effective Date Injunctions or Stays......................................... 19
4.12   Restructuring and Other Corporate Actions and Transactions ................ 19

ARTICLE V. – EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................... 22

5.1     Rejection and Repudiation of Executory Contracts and Unexpired
Leases........................................................................................... 22
5.2     Claims Based on Rejection or Repudiation of Executory Contracts and
Unexpired Leases........................................................................... 22
5.3     Termination of All Employee, Retiree and Workers' Compensation
Benefits ........................................................................................ 23
5.4     Survival of Certain Indemnification Obligations....................................... 23

ARTICLE VI. – PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS ................................................................................................. 23

6.1     Prosecution of Objections to Claims on and after the Effective Date ...... 23
6.2     Estimation of Claims..................................................................... 24
6.3     No Distributions Pending Allowance .............................................. 24
6.4     Distributions after Allowance ........................................................ 24
6.5     Disallowed Claims ........................................................................ 24

ARTICLE VII. – DISTRIBUTIONS ............................................................................... 25

7.1     Manner of Payment and Distributions under the Plan ............................. 25
7.2     Interest and Penalties on Claims.................................................... 25
7.3     Record Date for Distributions ........................................................ 25
7.4     Withholding and Reporting Requirements ...................................... 25
7.5     Setoffs ......................................................................................... 26
7.6     Allocation of Plan Distributions Between Principal and Interest ............. 26
7.7     Undeliverable or Returned Distributions ....................................... 26
7.8     Fractional Distributions ................................................................ 26
7.9     Miscellaneous Distribution Provisions .......................................... 26

ARTICLE VIII. – CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN........ 27

8.1     Conditions to the Effective Date.................................................... 27
8.2     Waiver of Condition ...................................................................... 27
8.3     Notice of Effective Date ................................................................ 27
8.4     Order Denying Confirmation ......................................................... 28

ARTICLE IX. – EFFECT OF THE PLAN ON CLAIMS AND EQUITY INTERESTS ............ 28

9.1     Discharge of Claims and Termination of Equity Interests....................... 28
9.2     Injunctions.................................................................................... 28

9.3     Releases..................................................................................................... 29
9.4     Limitation on Releases............................................................................... 30
9.5     Exculpation ................................................................................................ 30
9.6     Retention and Enforcement and Release of Causes of Action ................. 30

ARTICLE X. – MISCELLANEOUS PROVISIONS ................................................... 31

10.1    Retention of Jurisdiction .......................................................................... 31
10.2    Terms Binding ........................................................................................... 32
10.3    Severability ............................................................................................... 32
10.4    Computation of Time................................................................................. 32
10.5    Confirmation Order and Plan Control........................................................ 32
10.6    Incorporation by Reference....................................................................... 33
10.7    Modifications to the Plan.......................................................................... 33
10.8    Revocation, Withdrawal or Non-Consummation ..................................... 33
10.9    Courts of Competent Jurisdiction ............................................................ 33
10.10   Payment of Statutory Fees ........................................................................ 33
10.11   Notice........................................................................................................ 33
10.12   Reservation of Rights................................................................................ 35
10.13   No Waiver.................................................................................................. 35

## INDEX OF EXHIBITS

**Exhibit A**        Non-Exclusive List of Retained Causes of Action

   **Exhibit 1**  Non-Exclusive List of Accounts Receivables of Electric Transportation Engineering Corporation (d/b/a ECOtality North America)

## INTRODUCTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors") propose this joint plan of reorganization (the "Plan") for the resolution of outstanding claims against and interests in the Debtors pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.B. hereof. Holders of Claims and Equity Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, historical financial information and developments during the Chapter 11 Cases, as well as a summary and description of the Plan and certain related matters. The Debtors are proponents of the Plan within the meaning of Bankruptcy Code section 1129.

This Plan is advanced jointly by the Debtors as a plan of reorganization and for the liquidation of certain remaining assets for the benefit of creditors. The remaining assets of all of the Debtors will be pooled together and liquidated pursuant to the Liquidating Trust. The proceeds from the remaining assets will then be paid ratably within classes to all of the creditors of the Debtors in accordance with the applicable provisions of the Bankruptcy Code and this Plan. Upon Confirmation, this objective will be accomplished through the Liquidating Trust and the Stock Trust, all as more thoroughly set forth herein.

## ARTICLE I.
## DEFINITIONS AND RULES OF INTERPRETATION

**A.** **Rules of Interpretation and Governing Law.** For purposes of this document: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Bankruptcy Code section 102 shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Arizona, without giving effect to the principles of conflict of laws thereof.

1

**B.**   **Definitions.**  The following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below.  A term used in the Plan and not defined in the Plan but that is defined in the Bankruptcy Code shall have the meaning set forth in the Bankruptcy Code.

1.1    "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed under Bankruptcy Code sections 503(b), 507(a) or 1114(e)(2), including, without limitation, (a) any actual and necessary expenses of preserving the Estates; (b) any actual and necessary expenses of operating the Debtors' business; (c) any actual indebtedness or obligations incurred or assumed by the Debtors during the pendency of the Chapter 11 Cases in connection with the conduct of their businesses; (d) any actual expenses necessary or appropriate to facilitate or effectuate the Plan; (e) any amount required to be paid under Bankruptcy Code section 365(b)(1) in connection with the assumption of executory contacts or unexpired leases; (f) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330(a), 331 or 503(b)(2), (3), (4) or (5); (g) Claims arising under Bankruptcy Code section 503(b)(9); and (h) all fees and charges payable pursuant to section 1930 of title 28 of the United States Code.

1.2    "Allowed" shall mean, with reference to any Claim or Equity Interest, or any portion thereof, in any Class or category specified, against or of a Debtor, (a) a Claim or Equity Interest that has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no objection to allowance or priority or request for estimation has been filed prior to the Claims Objection Bar Date; (b) a Claim or Equity Interest for which a Proof of Claim has been timely filed in a liquidated amount and not contingent and as to which no objection to allowance, to alter priority, or request for estimation has been timely interposed and not withdrawn within the applicable period of limitation fixed by the Plan or applicable law; (c) a Claim or Equity Interest as to which any objection has been settled, waived, withdrawn or denied by a Final Order to the extent such Final Order provides for the allowance of all or a portion of such Claim or Equity Interest; or (d) a Claim or Equity Interest that is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the holder of such Claim or Equity Interest and the Debtors and the Liquidating Trustee, as applicable or (iii) pursuant to the terms of the Plan.  Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Equity Interest, "Allowed" in reference to a Claim shall not include (a) any interest on the amount of such Claim accruing from and after the Petition Date; (b) any punitive or exemplary damages; or (c) any fine, penalty or forfeiture.  Any Claim listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Bankruptcy Court.

1.3    "Allowed Claim" means a Claim or any portion thereof, without duplication, that has been Allowed.

1.4    "Administrative Claims Bar Date" means the deadline for filing requests for payment of Allowed Administrative Claims (other than Compensation Claims), which shall

2

be the first Business Day that is forty-five (45) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

1.5    "<u>Administrative Claims Objection Bar Date</u>" means the deadline for filing objections to requests for payment of Allowed Administrative Claims (other than requests for payment of Compensation Claims), which shall be the first Business Day that is one hundred eighty (180) days following the Effective Date; <u>provided</u>, <u>that</u>, the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

1.6    "<u>APA</u>" means, either individually or collectively as the case may be, those certain Asset Purchase Agreements among the various Buyers and the Debtors which have been approved by the Bankruptcy Court in these Chapter 11 Cases.

1.7    "<u>Avoidance Actions</u>" means (a) any and all actions that are filed or that may be filed pursuant to Bankruptcy Code sections 544, 545, 547, 548, 550 or 551, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Bankruptcy Code sections, or (b) any other similar actions or proceedings filed to recover property for or on behalf of the Estates.

1.8    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, § 101 *et. seq.*, as applicable, as of the Petition Date.

1.9    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Arizona, Phoenix Division.

1.10    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Bankruptcy Rules of the Bankruptcy Court, each as amended from time to time, applicable to the Chapter 11 Cases.

1.11    "<u>Bar Date</u>" means the date established by the Bankruptcy Court by which Proofs of Claim must have been filed with respect to such Claims, pursuant to that certain Final Order [Docket No. 364], and if not specified therein, a Final Order or the Plan.

1.12    "<u>Business Day</u>" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.13    "<u>Business Enterprise</u>" means such capital, credit, contracts, leases, licenses and any other assets required to enable Reorganized ECOtality to function as a viable historic substantial business pursuant to section 368 of the Tax Code.

1.14    "<u>Buyers</u>" means Blink Acquisition, LLC, Access Control Group, LLC and Intertek Testing Services NA, Inc., who purchased assets of the Debtors pursuant to the APAs.

1.15    "<u>Cash</u>" means cash and cash equivalents, in legal tender of the United States of America.

1.16    "<u>Causes of Action</u>" means any and all present or future claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses

3

in action, obligation, guaranty, controversy, demand, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person or Entity, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter, including without limitation, all other actions described in the Plan, including <u>Section 9.6</u>.

      1.17   "<u>Chapter 11 Cases</u>" means the respective bankruptcy cases of (a) ECOtality, Inc.; (b) Electric Transportation Engineering Corporation; (c) ECOtality Stores, Inc.; (d) ETEC North, LLC; (e) The Clarity Group, Inc.; and (f) G.H.V. Refrigeration, Inc. in the Bankruptcy Court and jointly administered under Case No. 2:13-BK-16126 (MCW).

      1.18   "<u>Claim</u>" means the same as set forth in Bankruptcy Code section 101(5) and includes all rights to payment from the Debtors.

      1.19   "<u>Claims and Noticing Agent</u>" means Kurtzman Carson Consultants LLC, employed by the Debtors as the official claims, noticing and balloting agent in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

      1.20   "<u>Claims Objection Bar Date</u>" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) one hundred eighty (180) days after the Effective Date and (b) such later period of limitation as may be specifically fixed by an order of the Bankruptcy Court.

      1.21   "<u>Committee</u>" means the committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases under Bankruptcy Code section 1102.

      1.22   "<u>Compensation Claims</u>" means Claims on account of fees for professional services rendered and expenses incurred in connection with such services by Professionals on and after the Petition Date and prior to and including the Confirmation Date.

      1.23   "<u>Confirmation</u>" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

      1.24   "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered by the Bankruptcy Court confirming the Plan, which order becomes final and non-appealable after the Confirmation Hearing.

      1.25   "<u>Confirmation Objection Deadline</u>" means the day that is fourteen (14) days prior to the Confirmation Hearing or such other date set by the Court.

      1.26   "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1128.

      1.27   "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

1.28  "Consummation" means "substantial consummation" as defined in Bankruptcy Code section 1101(2).

1.29  "Creditor" means a Person, firm, partnership, corporation or an Entity who has filed, or deemed to have filed, a lawful Claim against the Debtors, as provided by the Bankruptcy Code and orders of the Bankruptcy Court, and which Claim has been allowed by the Bankruptcy Court, or is deemed allowed by applicable provisions of law.

1.30  "Debtors" mean:  (a) ECOtality, Inc.; (b) Electric Transportation Engineering Corporation; (c) ECOtality Stores, Inc.; (d) ETEC North, LLC; (e) The Clarity Group, Inc.; and (f) G.H.V. Refrigeration, Inc.

1.31  "Disclosure Statement" means that Disclosure Statement filed with and approved by the Bankruptcy Court at or prior to the Confirmation Hearing.

1.32  "Disputed" means, with respect to any Claim or Equity Interest, any (a) Claim that is listed on the Schedules as unliquidated, disputed or contingent; (b) Claim or Equity Interest as to which the Debtors or any other party in interest have interposed a timely objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; (c) any Claim evidenced by a Proof of Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed; or (d) any Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest.

1.33  "Disputed Claims Reserve" means a fund held by the Liquidating Trust (which need not be held in a segregated bank account) for the payment of Disputed Claims that become Allowed Claims after the Effective Date, which fund shall be maintained by the Liquidating Trustee for the benefit of the Holders of Disputed Claims.

1.34  "Distribution Date" means date upon which the Liquidating Trustee will make distributions to holders of Allowed Claims entitled to receive distributions under the Plan on account of such Allowed Claims, which date shall be as soon as reasonably practicable.

1.35  "Distribution Record Date" means the record date for the purpose of determining holders of Allowed Claims entitled to receive distributions under the Plan on account of such Allowed Claims, which date shall be the Confirmation Date.

1.36  "DOE" means the United States Department of Energy.

1.37  "Effective Date" means the date upon which the Plan's conditions to effectiveness are satisfied or waived in accordance with Article VIII hereof, which shall be the day Consummation occurs.

1.38  "Entity" means an "entity" as defined in Bankruptcy Code section 101(15).

5

1.39    "Estate" means the bankruptcy estate of any Debtor by virtue of Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases.

1.40    "Equity Interest" means, with respect to a Debtor, as of the Petition Date, any capital stock or other ownership interest in such Debtor, whether or not transferable, any option, call, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in such Debtor, or any redemption, conversion, exchange, voting, participation, dividend rights and liquidation preferences relating to such capital stock or other ownership interest.

1.41    "Excluded Assets" means the assets which were specifically identified on the relevant schedules to the APAs as being excluded from the sales to the Buyers.

1.42    "Exculpated Parties" means (a) the Debtors, (b) each director, officer, financial advisor, restructuring advisor, attorney or any other advisor employed by or serving the Debtors as of or after the Petition Date, (c) the Committee, (d) counsel for the Committee, (e) each member of the Committee solely in its capacity as a member of the Committee, (f) the Plan Contributor, (g) each director, officer, financial advisor, restructuring advisor, attorney or any other advisor employed by or serving the Plan Contributor as of or after the Petition Date, (h) Blink Acquisition LLC, (i) each director, officer, financial advisor, restructuring advisor, attorney or any other advisor employed by or serving Blink Acquisition LLC as of or after the Petition Date, and (j) the respective predecessors, successors and assigns, and current and former shareholders, affiliates, subsidiaries, parents, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, crisis managers, accountants, investment bankers and consultants of each of the Entities in (a)-(i).

1.43    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, that, the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, that the Debtors reserve the right to waive any appeal period.

1.44    "General Unsecured Claim" means a Claim against the Debtors, which is not an Administrative Claim, Compensation Claim, Priority Tax Claim, Secured Claim, Priority Non-Tax Claim, Intercompany Claim or Section 510(b) Claim.

1.45    "Impaired" means, with respect to a Claim, or class of Claims, "impaired" within the meaning of the Bankruptcy Code section 1124.

6

1.46    "Intercompany Claims" means any amounts due or obligation among or between the Debtors, including without limitation intercompany receivables, intercompany investments, intercompany guarantees, contribution due to intercompany liabilities, or ownership interests of one Debtor by another Debtor as identified in the Plan Supplement.

1.47    "Interim Compensation Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 337], entered on November 25, 2013, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

1.48    "Lien" means any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien as defined in Bankruptcy Code section 101.

1.49    "Limited Released Parties" means the Debtors' current and former officers and directors, shareholders, affiliates, subsidiaries, principals, employees, agents, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers and consultants.

1.50    "Liquidating Trust" means the trust described in Section 4.1 to be established under laws of the state of Arizona that will effectuate the Liquidating Trust Agreement.

1.51    "Liquidating Trust Agreement" means the Liquidating Trust Agreement, the form of which will be included in the Plan Supplement, to be dated on or prior to the Effective Date, between the Debtors and the Liquidating Trustee, governing, among other things, the disposition of the Liquidating Trust Assets and distribution of the proceeds thereof in accordance with the Plan, and setting forth the duties and obligations of the Liquidating Trustee.

1.52    "Liquidating Trust Assets" means (a) the Excluded Assets, including Avoidance Actions, all Cash that is property of Debtors, including the Trust Deposit and the balance of the Minimum Distribution; (b) any Causes of Action (except to the extent a Cause of Action was transferred from the Debtors to an applicable Buyer under the respective APA); (c) all rights, claims and/or assets under any and all contracts, leases and agreements which have been rejected by the Debtors, including all rights and/or assets; and (d) any proceeds of the foregoing.

1.53    "Liquidating Trustee" means that Person or Entity under the Liquidating Trust Agreement responsible, as trustee of the Liquidating Trust, for implementing and carrying out the terms of the Liquidating Trust Agreement and the Plan, as selected by the Debtors and the Committee and identified in the Plan.

1.54    "Minimum Distribution" has the meaning ascribed in Section 4.12(a)(iii).

1.55    "New Board" means, collectively, the initial board of directors or members, as the case may be, of each of the Reorganized Debtors.

7

1.56    "New Corporate Governance Documents" means the form of the amended and restated articles of incorporation and bylaws, or other similar organizational and constituent documents, for each of the Reorganized Debtors, and which forms shall be included in the Plan Supplement.

1.57    "OCP Order" means the Final Order Authorizing the Employment and Compensation of Professionals Utilized in the Ordinary Course of Business [Docket No. 231].

1.58    "Person" means a "person" as defined in Bankruptcy Code section 101(41).

1.59    "Petition Date" means September 16, 2013, the date each Debtor filed its petition commencing the Chapter 11 Cases.

1.60    "Plan Contributor" means Blink UYA, LLC, who shall be deemed, only after the occurrence of the Effective Date, a Plan co-proponent as contemplated by section 1129 of the Bankruptcy Code; provided, however, that such Plan co-proponent status shall only afford the Plan Contributor the right, subject to applicable law, to seek amendments of the Plan after the Effective Date, as necessary, to enforce the terms of the Plan, subject to the prior written consent of the Liquidating Trustee and the Stock Trustee and upon reasonable notice regarding any such amendment; provided, further, and for the avoidance of doubt, that such Plan co-proponent status shall not afford the Plan Contributor the right to object, oppose or interfere in any manner with any action taken by the Debtors to seek additional extensions of the exclusive filing period under Bankruptcy Code section 1121(c)(3).

1.61    "Plan Stock" has the meaning ascribed in Section 4.12(a)(i).

1.62    "Plan Stockholder" means the Plan Contributor.

1.63    "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, in the discretion of the Debtors, including the Liquidating Trust Agreement, the Stock Trust Agreement, the Tax Sharing Agreement, the Stock Pledge Agreement, the Service Contracts, the list of Intercompany Claims and the New Corporate Governance Documents, which shall be in form and substance reasonably acceptable to the Debtors, the Committee and the Plan Contributor, which the Debtors shall respectively use reasonable efforts to cause to be filed seven (7) days prior to (but in no event later than) by the Confirmation Objection Deadline, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, as may be amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules.

1.64    "Priority Non-Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Bankruptcy Code section 507(a)(3), (4), (5) or (6), but other than any Priority Tax Claim.

1.65    "Priority Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Bankruptcy Code section 507(a)(8).

1.66 "Professional" means a Person or Entity employed by the Debtors or the Committee pursuant to a Final Order in accordance with the Bankruptcy Code sections 327, 328 or 1103.

1.67 "Proof of Claim" means a proof of claim filed by a holder of a Claim against any Debtor (as may be amended and supplemented from time to time pursuant to the Bankruptcy Code or Bankruptcy Rules) on or before the applicable Bar Date, or such other time as may be permitted by the Bankruptcy Court or agreed to by the Debtors or the Liquidating Trustee, as applicable.

1.68 "Purchased Assets" means the assets purchased by Blink Acquisition, LLC pursuant to the APA between the Debtors and such entity.

1.69 "Qualified Creditor Stock" has the meaning ascribed in Section 4.12(a)(i).

1.70 "Qualified Creditor Stock Beneficiary" means a Creditor with an Allowed General Unsecured Claim against Debtors which Allowed General Unsecured Claim is qualified under section 382(l)(5)(E) of the Tax Code.

1.71 "Released Parties" means, collectively: (a) the Debtors; (b) the Plan Contributor; (c) the Committee; (d) counsel for the Committee; and (e) Blink Acquisition, LLC.

1.72 "Reorganized Debtors" mean the Debtors upon and after the Effective Date.

1.73 "Reorganized ECOtality" means Debtor ECOtality, Inc. upon and after the Effective Date.

1.74 "Reorganized Stock" shall mean, collectively, the Qualified Creditor Stock and the Plan Stock.

1.75 "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by each of the Debtors pursuant to the Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

1.76 "Section 510(b) Claims" means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Bankruptcy Code section 502 on account of such a Claim.

1.77 "Secured" means when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable,

as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to the Plan.

1.78   "Service Contract" means any contract(s) and agreement(s) to be identified in the Plan Supplement and any future contracts or leases among Reorganized ECOtality and the Plan Stockholder or affiliate that may be required for Reorganized ECOtality to maintain the Business Enterprise.

1.79   "Stock Pledge Agreement" has the meaning ascribed in Section 4.12(a)(iii)(2).

1.80   "Stock Trust" means the trust established by the Stock Trust Agreement pursuant to the Stock Trust Agreement.

1.81   "Stock Trust Agreement" means that certain Qualified Creditor Stock Trust Agreement, the form of which shall be included in the Plan Supplement.

1.82   "Stock Trust Assets" means the Qualified Creditor Stock, the right to payments under the Tax Sharing Agreement, and the right to receive the Minimum Distribution, and any amounts received in respect of or proceeds from the foregoing.

1.83   "Stock Trustee" means the trustee appointed under the Stock Trust, who shall, among other things, collectively, hold the right to exercise any and all rights and duties provided for under the Stock Trust Agreement.

1.84   "Tax Code" means the Internal Revenue Code of 1986, as amended.

1.85   "Tax Sharing Agreement" means that certain Tax Sharing Agreement which governs the relationship between the Stock Trust, Reorganized ECOtality and the Plan Stockholder with respect to the sharing of certain anticipated tax benefits, the form of which shall be included in the Plan Supplement.

1.86   "Treasury Regulations" means the regulations promulgated pursuant to the Tax Code.

1.87   "Trust Agreements" mean the Liquidating Trust Agreement and/or the Stock Trust Agreement.

1.88   "Trust Deposit" has the meaning ascribed in Section 4.12(a)(iii)(1).

1.89   "Trusts" mean the Stock Trust and the Liquidating Trust.

1.90   "United States Trustee" means the United States Trustee for Region 14.

1.91   "Unimpaired" means, with respect to a class of Claims, a class of Claims that is not Impaired.

1.92  "Unsecured Claims Fund" means the Liquidating Trust Assets available for distribution after such assets have been monetized, to the extent applicable, to holders of Allowed Class 3 General Unsecured Claims by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement.

## ARTICLE II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.  **Unclassified Claims**.

2.1  **Administrative Claims**.  Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed Administrative Claim will receive from the Debtors or the Liquidating Trustee, as applicable, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim either:  (a) if such Allowed Administrative Claim is allowed as of the Effective Date, no later than forty-five (45) days after the Effective Date or as soon as reasonably practicable thereafter; (b) if the Claim is not Allowed as of the Effective Date, no later than forty-five (45) days after the date on which an order of the Bankruptcy Court allowing such Claim becomes a Final Order, or as soon thereafter as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Estates in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the holder of such Allowed Administrative Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the OCP Order) or as provided herein, unless previously filed, requests for payment of Allowed Administrative Claims must be filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Holders of Allowed Administrative Claims that are required to file and serve a request for payment of such Allowed Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their property, and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the requesting party by the Administrative Claims Objection Bar Date.

2.2  **Compensation Claims**.  Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Compensation Claims (a) shall no later than sixty (60) days after the Effective Date, file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date and (b) shall receive from the Debtors or the Liquidating Trustee, as applicable, as soon as reasonably practicable after such Claim is allowed, in full settlement, satisfaction, and release of, and in exchange for, such Allowed Administrative Claim, Cash in an

11

amount equal to the unpaid amount of such Allowed Compensation Claim in accordance with any Final Order allowing such Allowed Compensation Claim.

(a)    <u>Post-Confirmation Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtors or the Liquidating Trustee, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable fees and expenses incurred by Professionals on or after the Confirmation Date. Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Liquidating Trustee, as applicable, may pay any Professional in the ordinary course of business without any further notice, action, order or approval of the Bankruptcy Court.

2.3 **Substantial Contribution Compensation and Expenses**. Except as otherwise specifically provided in the Plan, any Person or Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b)(3), (4) or (5) must file an application and serve such application on counsel for the Debtors or the Liquidating Trustee, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules on or before the Administrative Claim Bar Date, or be forever barred from seeking such compensation or expense reimbursement. All rights of the Debtors, the Liquidating Trustee, the United States Trustee and all other parties in interest to object to such request are expressly reserved.

2.4 **Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Bankruptcy Code section 1129(a)(9)(C).

**B.** **General Rules**.

2.5 **Classification**. Pursuant to Bankruptcy Code sections 1122 and 1123, the following designates the Classes of Claims and Equity Interests under the Plan. A Claim or Equity Interest is in a particular Class for purposes of voting on, and of receiving distributions pursuant to, the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released or otherwise settled prior to the Effective Date. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

12

C.    **Summary of Classification of Claims and Equity Interests**.

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Allowed Secured Claims | Unimpaired | No (deemed to accept) |
| 2 | Allowed Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 3 | Allowed General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 5 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

D.    **Classified Claims and Equity Interests**

2.6    **Class 1 – Secured Claims**.

(a)    Classification.    Class 1 consists of all Allowed Secured Claims against the Debtors.

(b)    Treatment.    Except to the extent that a holder of an Allowed Secured Claim agrees to a less favorable treatment of its Allowed Secured Claim, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Secured Claim, each such holder thereof shall receive, at the option of the Debtors or Liquidating Trustee, as applicable, either: (i) payment in full in Cash of such holder's Allowed Secured Claim; (ii) reinstatement of such holder's Allowed Secured Claim; (iii) return of any collateral subject to such holder's Allowed Secured Claim; or (iv) such other treatment rendering such holder's Allowed Secured Claim Unimpaired.

(c)    Impairment and Voting.    Class 1 Claims are Unimpaired and the holders thereof are not entitled to vote on the Plan.

2.7    **Class 2 – Priority Non-Tax Claims**.

(a)    Classification.    Class 2 consists of all Allowed Priority Non-Tax Claims against the Debtors.

(b)    Treatment.    Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment of its Allowed Priority Non-Tax Claim, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Priority Non-Tax Claim, each such holder thereof shall receive, at the option of the Liquidating Trustee, either:  (i) payment in full in Cash of such holder's Allowed Priority Non-Tax Claim; or (ii) such other treatment rendering such Allowed Priority Non-Tax Claim Unimpaired.

13

(c)    <u>Impairment and Voting</u>.  Class 2 Claims are Unimpaired and the holders thereof are not entitled to vote on the Plan.

2.8    **<u>Class 3 – General Unsecured Claims</u>**.

(a)    <u>Classification</u>.  Class 3 consists of all Allowed General Unsecured Claims against the Debtors.

(b)    <u>Treatment</u>.  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed General Unsecured Claim, each holder thereof shall receive (a) Cash in an amount equal to the pro rata share of the Unsecured Claims Fund and (b) to the extent a holder of an Allowed General Unsecured Claim constitutes a Qualified Creditor Stock Beneficiary, distributions under, and in accordance with, the Tax Sharing Agreement and the Stock Trust Agreement, as applicable.

(c)    <u>Impairment and Voting</u>.  Class 3 Claims are Impaired and the holders thereof are entitled to vote on the Plan.

2.9    **<u>Class 4 – Intercompany Claims</u>**.

(a)    <u>Classification</u>.  Class 4 consists of all Intercompany Claims.

(b)    <u>Treatment</u>.  All Class 4 Claims shall be, at the election of the Reorganized Debtors, remain Unimpaired, as may be agreed to by the Reorganized Debtors and the holder of such Intercompany Claim.  For the avoidance of doubt, holders of Class 4 Intercompany Claims shall not be entitled to any distribution from the Unsecured Claims Fund or on account of the Trust Agreements and Tax Sharing Agreement, as applicable.

(c)    <u>Impairment and Voting</u>.  Class 4 Claims are Unimpaired and holders thereof are deemed to accept the Plan.

2.10    **<u>Class 5 – Section 510(b) Claims</u>**.

(a)    <u>Classification</u>.  Class 5 consists of all Section 510(b) Claims.

(b)    <u>Treatment</u>.  All Class 5 Claims shall be discharged, cancelled, released and extinguished as of the Effective Date without any distribution on account of such Claims.

(c)    <u>Impairment and Voting</u>.  Class 5 Claims are Impaired and holders thereof are deemed to reject the Plan.

2.11    **<u>Class 6 – Equity Interests</u>**.

(a)    <u>Classification</u>.  Class 6 consists of all Equity Interests.

14

(b)    <u>Treatment</u>.  All Equity Interests shall be discharged, cancelled, released and extinguished without any distribution on account of such Equity Interests.

(c)    <u>Impairment and Voting</u>.  Class 6 Equity Interests are Impaired and holders thereof are deemed to reject the Plan.

**E.    <u>Additional Provisions Regarding Unimpaired Claims and Subordinated Claims</u>.**

2.12    **Special Provision Regarding Unimpaired Claims**.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments asserted against Unimpaired Claims.

2.13    **Subordinated Claims**.  The allowance, classification and treatment of all Allowed Claims and Allowed Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b), or otherwise.  Pursuant to Bankruptcy Code section 510, the Debtors, subject to the reasonable consent of the Plan Contributor, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE III.**
**ACCEPTANCE**

3.1    **Elimination of Vacant Classes**.  Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

3.2    **Cramdown**.  The Debtors shall request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b).  The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to Bankruptcy Code section 1129(b) requires modification to the Plan.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF PLAN**

4.1    **Liquidating Trust**.  Distributions to holders of Allowed Claims (including Compensation Claims) contemplated under the Plan shall be funded by the proceeds of Liquidating Trust Assets.  After the payment or reservation for, as applicable, the expenses of administering the Liquidating Trust, including the winding down and closing of the Chapter 11 Cases (including with respect to any fees and expenses incurred by any Professionals after the Confirmation Date), the fees and expenses of the Liquidating Trustee and its retained

professionals, all Allowed Administrative Claims, Allowed Compensation Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Non-Tax Claims and appropriate reserves, and any remaining assets shall be used to fund the Unsecured Claims Fund.

(a)    Creation.  On the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement, the terms of which shall be incorporated herein by reference.  As of the Effective Date, all of the Liquidating Trust Assets shall be transferred to the Liquidating Trust, pursuant to the terms of the Liquidating Trust Agreement. The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d).

(b)    Employment and Compensation of Professionals.  In accordance with the Liquidating Trust Agreement, the Liquidating Trust may employ such counsel (which may include one or more of the same counsel employed by either the Debtors or the Committee), advisors and other professionals (which may include one or more of the same Professionals employed by either the Debtors or the Committee) selected by the Liquidating Trustee that the Liquidating Trustee reasonably requires to perform its responsibilities under the Plan without further order from the Bankruptcy Court.  The Liquidating Trust's professionals shall be compensated at their respective standard hourly rates as agreed to by the Liquidating Trustee, without further motion, application, notice, or other order of the Bankruptcy Court.  The fees and expenses of the Liquidating Trust's professionals shall be satisfied out of the Liquidating Trust Assets.

## 4.2    **Liquidating Trustee**.

(a)    Appointment.  The Liquidating Trustee shall be deemed appointed on the Effective Date, without further motion, application, notice, hearing or other order of the Bankruptcy Court.  The Debtors hereby recommend that the initial Liquidating Trustee shall be Carolyn Johnsen, which recommendation is acceptable to the Committee.  Ms. Johnsen has served as counsel to the Committee and, as a result, is knowledgeable about the Debtors, the Chapter 11 Cases and the Liquidating Trust Assets.   For further information regarding Ms. Johnsen's qualifications to serve as the Liquidating Trustee, please refer to **Exhibit B** of the Disclosure Statement.  In the event Ms. Johnsen does not serve as Liquidating Trustee for some reason, the Debtors reserve the right to select a Person or Entity to serve as the Liquidating Trustee, which selection shall be reasonably acceptable to the Committee.

(b)    Duties.  As more fully described in the Liquidating Trust Agreement, the Liquidating Trustee shall have the responsibility for administering the Liquidating Trust, maintaining applicable reserves, liquidating the Liquidating Trust Assets, and making distributions under the Plan.

(c)    No Further Approvals Required/Transfer of Liquidating Trust Assets.  In performance of its duties hereunder, the Liquidating Trustee shall have the rights and powers of a debtor in possession under Bankruptcy Code section 1107, and such other rights, powers, and duties necessary, appropriate, advisable or convenient to effectuate the provisions of the Plan.  On and after the Effective Date, the Liquidating Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or governmental body and/or provide any

16

notices under any applicable laws to implement the terms of the Plan, including the transfer of any Liquidating Trust Assets retained by the Liquidating Trust, except as explicitly set forth in the Liquidating Trust Agreement. As further set forth in the Liquidating Trust Agreement, without limitation of the foregoing, the Liquidating Trustee shall be authorized pursuant to this Plan to transfer any or all of the Liquidating Trust Assets without necessity of any further notice or approval of the Bankruptcy Court and/or under any applicable state or federal law. This provision shall be subject in its entirety to the Liquidating Trust Agreement.

4.3 **Stock Trust**.

(a) <u>Creation</u>. On the Effective Date, the Stock Trust shall be created pursuant to the Stock Trust Agreement, the terms of which shall be incorporated herein by reference. As of the Effective Date, all of the Stock Trust Assets shall be transferred to the Stock Trust pursuant to the terms of the Stock Trust Agreement. The rights of the Qualified Creditor Stock Beneficiaries shall be set forth in the Stock Trust Agreement. The Stock Trust shall be established for the sole purpose of liquidating and distributing the Stock Trust Assets while preserving the value of the Stock Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d).

(b) <u>Employment and Compensation of Professionals</u>. In accordance with the Stock Trust Agreement, the Stock Trust may employ such counsel, advisors and other professionals selected by the Stock Trustee that the Stock Trust reasonably requires to perform its responsibilities under the Plan without further order from the Bankruptcy Court. The Stock Trust's professionals shall be compensated at their respective standard hourly rates as agreed to by the Stock Trustee, without further motion, application, notice, or other order of the Bankruptcy Court.

4.4 **Stock Trustee**.

(a) <u>Appointment</u>. The Stock Trustee shall be deemed appointed on the Effective Date, without further motion, application, notice, hearing or other order of the Bankruptcy Court. The Debtors hereby recommend that the initial Stock Trustee shall be Carolyn Johnsen, which recommendation is acceptable to the Committee. Ms. Johnsen has served as counsel to the Committee and, as a result, is knowledgeable about the Debtors, the Chapter 11 Cases and the Stock Trust Assets. For further information regarding Ms. Johnsen's qualifications to serve as the Stock Trustee, please refer to **Exhibit B** of the Disclosure Statement. In the event Ms. Johnsen is not able or determines not to serve as Stock Trustee for some reason as of the Effective Date, the Debtors reserve the right to select a Person or Entity to serve as the Stock Trustee, which selection shall be reasonably acceptable to the Committee.

(b) <u>Duties</u>. The Stock Trustee shall have the responsibility for administering the Stock Trust in accordance with the Stock Trust Agreement.

(c) <u>No Further Approvals Required/Transfer of Stock Trust Assets</u>. On and after the Effective Date, the Stock Trustee shall not be required to obtain any approvals from the Bankruptcy Court, any court or governmental body and/or provide any notices under any applicable laws to implement the terms of the Plan, including the transfer of any Stock Trust

17

Assets retained by the Stock Trust, except as explicitly set forth in the Stock Trust Agreement. As further set forth in the Stock Trust Agreement, without limitation of the foregoing, the Stock Trustee shall be authorized pursuant to this Plan to transfer any or all of the Stock Trust Assets without necessity of any further notice or approval of the Bankruptcy Court and/or under any applicable state or federal law. This provision shall be subject in its entirety to the Stock Trust Agreement.

            4.5    **New Board**. Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Plan Supplement, on the Effective Date, the directors and officers identified in the Plan Supplement, and who shall be reasonably acceptable to the Plan Contributor, the Debtors and the Committee, shall serve as the New Board of the Reorganized Debtors that are corporations. Pursuant to section 1129(a)(5), the Debtors will disclose in the Plan Supplement, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on a Reorganized Debtor's New Board and, to the extent such Person is an Insider, the nature of any compensation for such Person. After the Effective Date, the corporate governance and management of the Reorganized Debtors shall be determined by the applicable board of managers or board of directors in accordance with the laws of the applicable state or country of organization.

            4.6    **Cancellation of Notes, Instruments, and Outstanding Equity Interests**. On the Effective Date, except as otherwise provided for in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, all agreements, stock, instruments, certificates and other documents in respect of the Equity Interests shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released and discharged.

            4.7    **Cancellation of Liens**. On the Effective Date, except as otherwise provided for in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, any Lien securing any Claim shall be deemed released, and the holder of such Claim shall be authorized and directed to release any collateral or other property of any Debtor held by such holder and to take such actions as may be requested by the Debtors or the Liquidating Trustee, as applicable, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors or the Liquidating Trustee, as applicable.

            4.8    **Exemption from Certain Transfer Taxes and Recording Fees**. To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfer from a Debtor to the Liquidating Trustee or to any entity under, pursuant to, in contemplation of, or in connection with the Plan or through: (a) the issuance, distribution, transfer or exchange of any debt, securities or other interest in the Debtors; (b) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document

recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

    4.9 **No Further Approvals**. The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors or the Liquidating Trustee, as applicable.

    4.10 **Dissolution of Committee**. The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code section 1103 and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Committee shall be dissolved and the Committee's members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's Professionals shall terminate.

    4.11 **Pre-Effective Date Injunctions or Stays**. All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

    4.12 **Restructuring and Other Corporate Actions and Transactions**.

      (a) <u>Restructuring Transactions</u>. Upon the Effective Date, the following transactions shall be effectuated contemporaneously:

        (i) All of the issued and outstanding capital stock of ECOtality, Inc. shall be cancelled and new shares of common stock, the Reorganized Stock, shall be issued as follows: 50% to the Stock Trustee for the *pro rata* benefit of the Qualified Creditor Stock Beneficiaries (the "<u>Qualified Creditor Stock</u>") and 50% to the Plan Stockholder (the "<u>Plan Stock</u>").

        (ii) The Plan Stockholder, the Reorganized Debtors and the Stock Trustee shall execute the Tax Sharing Agreement.

        (iii) The Qualified Creditor Stock Beneficiaries shall receive, on a *pro rata* basis, no less than $925,000 (the "<u>Minimum Distribution</u>") as follows:

          (1) The Plan Contributor has deposited $200,000 in cash (the "<u>Trust Deposit</u>") with the Debtors, to be held in trust and to be distributed pursuant to <u>Section 4.12(a)(iii)(2)</u>.

19

(2)    In the event that the Qualified Creditor Stock Beneficiaries have not received at least $925,000 in cash on or prior to the third anniversary of the Effective Date on account of their Qualified Creditor Stock or the Tax Sharing Agreement, then, within thirty (30) days after the third anniversary of the Effective Date, the Plan Contributor shall pay to the Liquidating Trust, without setoff or reduction of any kind or for any purpose, $725,000 as follows: three equal installments, the first to be paid, in cash, no later than the thirtieth (30th) day after the third anniversary of the Effective Date (the "First Payment Date"), and on the same date yearly thereafter until the third and final payment is made. Any such payment shall be reduced dollar for dollar to the extent a payment has previously been made by Reorganized ECOtality to the Stock Trust whether pursuant to the Tax Sharing Agreement on account of a tax benefit to Reorganized ECOtality or otherwise. The Liquidating Trustee shall distribute to the Qualified Creditor Stock Beneficiaries their *pro rata* share of such $725,000 in addition to the Trust Deposit pursuant to the Liquidating Trust Agreement and the Stock Trust Agreement, as applicable. The obligation of the Plan Contributor to pay the balance of the Minimum Distribution after payment of the Trust Deposit as contemplated in Section 4.12 shall be secured by a physical pledge of such number of shares of common stock of Car Charging Group, Inc. that have the value, as of the Effective Date, of the Minimum Distribution (the "Pledged Shares") in favor of the Liquidating Trust pursuant to a stock pledge agreement (the "Stock Pledge Agreement"). A stock certificate or certificates representing the Pledged Shares shall be delivered in pledge to the Stock Trustee on the Effective Date. The Stock Trustee may exercise any remedies, immediately and without interference by any party, under the Stock Pledge Agreement, including the right to foreclose on the Pledged Shares, in the event of a failure to make any payment due under the Stock Trust Agreement and the Tax Sharing Agreement by Reorganized ECOtality or the Plan Contributor, as applicable, to the Stock Trust. Promptly after the end of each succeeding year following the Effective Date, to the extent the value of the Pledged Shares at such time no longer is equal to the amount of the Minimum Distribution that remains unpaid to the Stock Trust, no later than five (5) business days after receiving notice of such deficiency from the Stock Trustee, which notice shall include a calculation of the deficiency and may only be provided by the Stock Trustee to the Plan Contributor promptly after the end of each calendar year, the Plan Contributor shall pledge additional shares of common stock of Car Charging Group, Inc. as Pledged Shares such that the value of the Pledged Shares in the aggregate equals the amount of the Minimum Distribution that then remains unpaid to the Stock Trust (*i.e.* less any amounts paid pursuant to this Plan, including amounts paid at any time after the First Payment Date, pursuant to the Tax Sharing Agreement and the Stock Trust). For purposes of the foregoing yearly review of the value of the Pledged Shares relative to the amount of the Minimum Distribution that remains unpaid, the value of such Pledged Shares shall be the average of the closing prices of the common stock of Car Charging Group, Inc. listed on the OTC Bulletin Board (or such other securities exchange or over-the-counter trading market or service on which such shares are then traded or quoted) for the ten (10) consecutive trading days ending five (5) days prior to the delivery of the notice referenced above in this Section 4.12(a)(iii)(2).

(3)    The Stock Trustee shall use commercially reasonable efforts, within thirty (30) days after the Effective Date, to provide the Liquidating Trustee with a list and contact information for all Qualified Creditor Stock Beneficiaries existing as of that date.

(4)     The Stock Trustee shall use commercially reasonable efforts, within thirty (30) days prior to the third anniversary of the Effective Date, to provide the Liquidating Trustee with a list and contact information for all Qualified Creditor Stock Beneficiaries existing as of that date, as well as an accounting of all distributions made to the Qualified Creditor Stock Beneficiaries on account of the Plan Stock and the Tax Sharing Agreement.

(b)     <u>Continued Operation of Reorganized ECOtality</u>.  On and after the Effective Date, Reorganized ECOtality shall continue in business as a Business Enterprise.

(i)     The New Corporate Governance Documents shall, as of the Effective Date, be adopted and shall go into effect in accordance with applicable state law.  Such documents shall conform to the terms of this Plan and any agreements ancillary to this Plan and shall otherwise be in form and substance reasonably acceptable to the Debtors, the Committee and the Plan Contributor.  For the avoidance of doubt, nothing in New Corporate Governance Documents shall impair the rights of the Stock Trust or the obligations of the Plan Contributor as set forth in this Plan.

(ii)     On the Effective Date, the Plan Stockholder shall transfer and assign its rights and obligations pursuant to the Service Contracts to Reorganized ECOtality, and Reorganized ECOtality shall accept such assignment.

(iii)     Subject to the consent of the Debtors and the Committee, Reorganized ECOtality may, in its discretion as required for Reorganized ECOtality to maintain the Business Enterprise, pursuant to and under the terms of the loan documents included in the Plan Supplement, enter into a loan for borrowed money as needed to fund its operations under a revolving line of credit (the "<u>Operating Line of Credit</u>").  The Operating Line of Credit, subject to the consent of the Debtors and the Committee, shall be secured by interests in (i) all of the assets of Reorganized ECOtality acquired by the Reorganized ECOtality after the Effective Date (for clarity, and without limitation, expressly excluding the Liquidating Trust Assets), (ii) a pledge of the Plan Stock and/or (iii) the Qualified Creditor Stock, which pledge may only be exercised if an event of default (as defined in the loan documents pursuant to which the Operating Line of Credit is provided) has occurred and is continuing, following not less than five (5) business days' notice thereof to the Stock Trustee.  An event of default under the Operating Line of Credit shall constitute an event of default under the Stock Pledge Agreement and the Stock Trustee shall be permitted to exercise all remedies under the Stock Pledge Agreement, including foreclosing on the Pledged Shares, immediately and without notice or interference from any party.

(iv)     No later than five (5) business days after the exercise of remedies upon an event of default under the Operating Line of Credit, the Plan Contributor shall pay the Minimum Distribution (less any amounts previously paid to the Stock Trust for the benefit of the Qualified Creditor Stock Beneficiaries pursuant to the Tax Sharing Agreement and the Stock Trust Agreement, as applicable) to the Stock Trust, without setoff or reduction of any kind or for any purpose, which amounts shall be distributed for the benefit of Qualified Creditor Stock Beneficiaries pursuant to the Trust Agreements, as applicable.

21

(v)     The Plan Stockholder may, in its discretion, pursuant to terms that may be agreed upon by Reorganized ECOtality and the Plan Stockholder, transfer assets, other than the Purchased Assets, to Reorganized ECOtality as may be required for Reorganized ECOtality to continue to maintain the Business Enterprise.

(c)     <u>General Corporate Actions</u>.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) cancellation and reissuance of stock and all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized ECOtality, and any corporate action required by the Debtors or Reorganized ECOtality in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stock holders, the managing members, directors or officers of Debtor ECOtality.  On or (as applicable) prior to the Effective Date, the managing members, directors or officers of the Debtors shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of an on behalf of the Debtors and Reorganized ECOtality.   Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.  In the event of any conflict between the provisions of this Plan and any actions, documents, agreements, or otherwise arising from this <u>Section 4.12</u>, the provisions of this Plan shall govern.

## ARTICLE V.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     <u>Rejection and Repudiation of Executory Contracts and Unexpired Leases</u>. On the Effective Date, all executory contracts and unexpired leases shall be deemed rejected or repudiated pursuant to Bankruptcy Code section 365 other than those executory contracts or unexpired leases that: (a) previously were assumed or rejected by the Debtors; (b) are otherwise addressed in the Confirmation Order; (c) are otherwise addressed in the Plan; or (d) are the subject of a motion to reject such executory contracts or unexpired leases, as applicable, that is pending on the Effective Date, regardless of whether the requested effective date of such rejection is on or after the Effective Date.

5.2     <u>Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases</u>.  If the rejection or repudiation of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors or their properties, or any of their interests in properties as agent, successor or assign, unless a Proof of Claim is filed with the Claims and Noticing Agent and served upon counsel to the Liquidating Trustee within thirty (30) days after the earlier of (i) entry of the Confirmation Order and (ii) the effective date of rejection or repudiation of the executory contract or unexpired lease.  The Debtors shall give notice of the bar date established by this <u>Section 5.2</u> to the non-Debtor counterparties to the executory contracts and unexpired leases by service of the Plan, the Confirmation Order, or otherwise.  Unless otherwise provided herein, the Liquidating Trustee shall object to such Claims on or before the Claims Objection Bar Date.

5.3     Termination of All Employee, Retiree and Workers' Compensation Benefits.  All existing employee benefits (including, without limitation, workers' compensation benefits, health care plans, disability plans, severance benefit plans, incentive plans, and life insurance plans) and retiree benefits (as such term is defined under Bankruptcy Code section 1114(a)) not previously terminated by the Debtors shall be terminated on or before the Effective Date, except as otherwise expressly provided in the Confirmation Order.

5.4     Survival of Certain Indemnification Obligations.  Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person or Entity pursuant to the Debtors' certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Person or Entity based upon any act or omission related to such Person or Entity's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all past, present and future actions, suits, and proceedings relating to the Debtors shall continue as obligations of the Liquidating Trust only in accordance with this Section 5.4, and shall survive confirmation of the Plan, irrespective of whether any such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all monetary obligations under this Section 5.4 shall be limited solely to available insurance coverage and neither the Liquidating Trust, the Liquidating Trust Assets, the Liquidating Trustee, the Plan Contributor, the Plan Stockholder, Blink Acquisition LLC, the Stock Trust, the Stock Trust Assets, the Stock Trustee nor any of the Reorganized Debtors shall be liable for any such obligations under any circumstance.  Any Claim based on the Debtors' obligations set forth in this Section 5.4 shall not be subject to any objection by reason of Bankruptcy Code section 502(e)(1)(B).  Notwithstanding anything to the contrary herein, there also shall be no obligation of any kind on the part of the Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Contributor, the Plan Stockholder, Blink Acquisition LLC, the Stock Trust, the Stock Trustee or any of the Reorganized Debtors with respect to any Claims, suits or actions against a Person or Entity that result in a final order determining that such Person or Entity is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

**ARTICLE VI.**
**PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS**

6.1     **Prosecution of Objections to Claims on and after the Effective Date**.

(a)     On and after the Effective Date, objections to, and requests for estimation of, any Claims, including any Claims scheduled by the Debtors in the Schedules, may be interposed and prosecuted only by the Liquidating Trustee and the Liquidating Trust.  Such objections and requests for estimation shall be served on the respective holder of such Claim and filed with the Bankruptcy Court on or before the later of (i) Claims Objection Bar Date and (ii) such other date as may be fixed by the Bankruptcy Court upon a motion filed by the Liquidating Trustee and served only upon the United States Trustee and any party that has filed a notice of appearance and request for service of notices and papers on or after the Effective Date.

23

(b)　　　On the Effective Date, all pending objections to and requests for estimation of any Claims will vest in the Liquidating Trust.

(c)　　　On and after the Effective Date, the Liquidating Trustee shall be authorized to resolve all respective Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature and/or amount thereof.  If the Liquidating Trustee agrees with the holder of a Disputed Claim to compromise, settle and/or resolve a Disputed Claim by granting such holder an Allowed Claim, then the Liquidating Trustee may compromise, settle and/or resolve such Disputed Claim without Bankruptcy Court approval.

6.2　　**Estimation of Claims**.  The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c) regardless of whether the Debtors or the Liquidating Trustee, as applicable, scheduled such Claim in the Schedules, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

6.3　　**No Distributions Pending Allowance**.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such disputed portion; provided, however, that the Liquidating Trustee may, at its discretion and in accordance with the Trust Agreements, pay any undisputed portion of a Disputed Claim in accordance with the terms of the Plan or the Trust Agreements, as applicable.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any distribution withheld pending the resolution of such Claim shall be reallocated *pro rata* to the holders of Allowed Claims in the same Class.

6.4　　**Distributions after Allowance**.  To the extent that a Disputed Claim becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan, the Trust Agreements, and the Confirmation Order.  As soon as practicable after the date that an order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Trustees shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan.

6.5　　**Disallowed Claims**.  Any Claim held by a Person or Entity against whom any Debtor or the Liquidating Trust has commenced a proceeding asserting a Cause of Action under Bankruptcy Code section 542, 543, 544, 545, 547, 548, 549, 550, 551 and/or 553, shall be

24

deemed disallowed pursuant to Bankruptcy Code section 502(d) and the holder of such Claim shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this <u>Section 6.5</u> shall continue to be disallowed for all purposes until such Cause of Action has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trust, as applicable, from such party have been paid.

**ARTICLE VII.**
**DISTRIBUTIONS**

7.1     **Manner of Payment and Distributions under the Plan**.     All distributions under the Plan shall be made by the Liquidating Trustee pursuant to the terms of the Trust Agreements, the Plan and the Confirmation Order.

(a)     <u>Distributions to Holders of Allowed Claims</u>.     Subject to the conditions set forth in the Trust Agreements, the Liquidating Trustees will make distributions on account of Allowed Claims as of the Distribution Date or otherwise in accordance with the provisions of <u>Article II</u> hereof or otherwise in the Plan or the Confirmation Order. The Trustees will make subsequent distributions to a holder of such Allowed Claim within a reasonable period of time after such Claim becomes Allowed. Payments of Cash by the Liquidating Trustee pursuant to the Plan and the Trust Agreements may be by check drawn on a domestic bank and shall be made to the address of the holder of such Claim as most recently indicated on or prior to the Effective Date in the Debtors' books and records. At the option of the Liquidating Trustee, payments may be made by wire transfer from a bank.

7.2     **Interest and Penalties on Claims**.     Unless otherwise specifically provided for in the Plan, the Trust Agreements, the Confirmation Order, required by applicable bankruptcy law or necessary to render a Claim Unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of the Plan.

7.3     **Record Date for Distributions**.     None of the Debtors or the Trustees will have any obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and make distributions only to those holders of Allowed Claims that are holders of such Claims as of the close of business on the Distribution Record Date. The Debtors and the Trustees shall be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

7.4     **Withholding and Reporting Requirements**.     In connection with the Plan, the Trustees shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements. The Trustees shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the

25

satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such distribution. The Trustees have the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to the Trustees for payment of any such tax obligations. The Trustees may require, as a condition to the receipt of a distribution, that the holder of an Allowed Claim complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If such holder fails to comply with such request within one year, such distribution shall be deemed an unclaimed distribution.

7.5 **Setoffs**. Except as provided under the Plan, the Debtors and/or the Trustees may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors may have against the holder of a Claim, but neither the Debtors' or Liquidating Trustee's failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the of any such claim the Debtors or the Liquidating Trustee, as applicable, may have against such holder of a Claim.

7.6 **Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to distribution under the Plan consists of indebtedness and accrued but unpaid interest thereon, such distributions shall, for all income tax purposes, be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

7.7 **Undeliverable or Returned Distributions**. If any Allowed Claim distribution is returned to the Trustees as undeliverable, the Trustees shall use reasonable efforts to determine the correct address of the holder of such Claim. If such reasonable efforts are unsuccessful, no further distributions shall be made to the holder of such Claim unless and until the Trustees are notified in writing of such holder's then current address. Upon receipt by the Trustees, returned Cash shall not earn any interest or be entitled to any dividends or other accruals of any kind. Any holder of an Allowed Claim that does not assert a Claim pursuant to this Section 7.7 for a returned distribution within one (1) year after the Effective Date shall be forever barred from asserting any such Claim against the Debtors or their property or other property transferred pursuant to the Plan and Trust Agreements.

7.8 **Fractional Distributions**. No fractional dollars or shares shall be distributed. Where fractional dollars would otherwise be called for, the actual issuance shall reflect a rounding down of such fraction to the nearest whole dollar.

7.9 **Miscellaneous Distribution Provisions**.

(a) Foreign Currency Exchange Rate. Except as specifically provided for in the Plan or an order of the Bankruptcy Court, as of the Effective Date, any Claim asserted in currency other than U.S. dollars automatically shall be deemed converted to the equivalent U.S. dollar value using Bank of America's noon spot rate as of the Petition Date for all purposes under the Plan, including voting, allowance and distribution.

(b)      <u>Distributions on Non-Business Days</u>.  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(c)      <u>Partial Distributions on Disputed Claims</u>.  The Debtors or the Trustees, as applicable, may, but are not required to, make partial distributions to holders of Disputed Claims for the amount of the undisputed portion of such holder's Disputed Claim.

(d)      <u>Disputed Payments</u>.  If any dispute arises as to the identity of the holder of an Allowed Claim entitled to receive any distribution under the Plan, the Trustees may retain such distribution until its disposition is determined by a Final Order or written agreement among the interested parties to such dispute.

(e)      <u>Post-Consummation Effect of Evidence of Claims or Equity Interests</u>.  Except as otherwise provided herein, notes, stock certificates, membership certificates, unit certificates and other evidence of Claims against, or Equity Interests in, the Debtors shall, effective on the Effective Date, represent only the right to participate in the distributions contemplated by the Plan and shall not be valid or effective for any other purpose.

(f)      <u>Disgorgement</u>.  To the extent that any property, including Cash, is distributed to a Person or Entity on account of a Claim that is not an Allowed Claim, such property shall be held in trust for and shall promptly be returned to the Liquidating Trustee.

## ARTICLE VIII.
## <u>CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN</u>

8.1      **Conditions to the Effective Date**.  Consummation of the Plan and the occurrence of the Effective Date are subject to satisfaction of the following conditions:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, and such Confirmation Order shall have become a Final Order;

(b)      No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 has been made, or, if made, remains pending; and

(c)      All documents necessary to implement the transactions contemplated by this Plan are in form and substance acceptable to the Debtors.

8.2      **Waiver of Condition**.  The conditions set forth in <u>Section 8.1</u>, other than the condition requiring that the Confirmation Order shall have been entered by the Bankruptcy Court, may be waived in whole or in part by the Debtors.

8.3      **Notice of Effective Date**.  The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in <u>Section 8.1</u> of the Plan have been satisfied or waived pursuant to <u>Section 8.2</u>, and the Effective Date has occurred.

Case 2:13-bk-16126-MCW    Doc 693    Filed 10/28/14    Entered 10/28/14 18:13:44    Desc
Main Document    Page 33 of 49

8.4 **Order Denying Confirmation**. If the Plan is not Consummated, then nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or Claim of the Debtors; (d) be deemed an admission against interest by the Debtors; or (e) constitute a settlement, implicit or otherwise, of any kind whatsoever.

## ARTICLE IX.
## EFFECT OF THE PLAN ON CLAIMS AND EQUITY INTERESTS

9.1 **Discharge of Claims and Termination of Equity Interests**.

(a) Except with respect to Class 4 Creditors, to the extent their Claims are expressly not discharged, and as of the Effective Date, except as otherwise explicitly provided in the Plan or the Confirmation Order including with respect to Class 4 Claims, the rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and satisfaction or termination of all Equity Interests. Except with respect to Class 4 Creditors, to the extent their Claims are expressly not discharged, and except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), in each case whether or not (w) a Proof of Claim is filed or deemed filed pursuant to Bankruptcy Code section 501, (x) a Claim based on such debt is Allowed pursuant to Bankruptcy Code section 502, (y) the holder of a Claim based on such debt has accepted the Plan or (z) such Claim is listed in the Schedules; and (ii) satisfy, terminate or cancel all Equity Interests and other rights of equity security holders in the Debtors.

(b) As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims except with respect to Class 4 Creditors, to the extent their Claims are expressly not discharged, and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Equity Interests and other rights of equity security holders in the Debtors, pursuant to Bankruptcy Code sections 524 and 1141, and such discharge will void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

9.2 **Injunctions**.

(a) Except as otherwise provided in the Plan, the Trust Agreements or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that: (i) are subject to compromise and settlement pursuant to the terms of the Plan; (ii) have been released pursuant to Section 9.3; (iii) are subject

to exculpation pursuant to Section 9.5 (but only to the extent of the exculpation provided in Section 9.5); or (iv) are otherwise stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner any action or other proceeding, including on account of any Claims, Equity Interests, Causes of Action or liabilities that have been compromised or settled against the Debtors or any Person or Entity so released or exculpated (or the property or estate of any Person or Entity, directly or indirectly, so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Equity Interests, Causes of Action or liabilities.

9.3     **Releases**.

(a)     Debtor Releases.  Notwithstanding anything contained herein to the contrary, except as provided in Section 9.4, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for good and valuable consideration provided by each of the Released Parties and Limited Released Parties, as applicable, the adequacy of which is hereby confirmed, the Released Parties and the Limited Released Parties (subject to Section 9.4 herein) are deemed conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged by the Debtors and their Estates from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party or Limited Released Party, as applicable, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party or a Limited Released Party, as applicable, that constitutes actual fraud, willful misconduct or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

(b)     Releases by Holders of Claims and Equity Interests.  Except for any obligation, claim, cause of Action or liability arising expressly under the Plan, reserved by any Person or Entity pursuant to the Plan or as provided in Section 9.4, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, holders of Claims and Equity Interests shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Released Parties and the Limited Released Parties, as applicable, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in

29

law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party or Limited Released Party, as applicable, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party or Limited Released Party, as applicable, that constitutes actual fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

9.4 **Limitation on Releases**. Notwithstanding any other provision of this Article IX, nothing in this Article IX shall be deemed to release the Limited Released Parties from any claim related to the prepetition conduct with respect to the prepetition operations and affairs of the Debtors. Such claims include, <u>without</u> <u>limitation</u>, claims for deepening insolvency; breach of fiduciary duties; misrepresentation, negligence, and other misconduct; aiding and abetting such misconduct; fraudulent conveyances and preference recoveries.

9.5 **Exculpation**. Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, none of the Exculpated Parties, shall have or incur any liability from the Petition Date to the Effective Date for any claim, cause of action, or other assertion of liability for any act taken or omitted in connection with, or arising out of, the Chapter 11 Cases or the negotiation, formulation, preparation, administration, consummation and/or implementation of the Plan, or any contract, instrument, document, or other agreement entered into pursuant thereto through the Effective Date; provided that the foregoing shall not affect the liability of any Person or Entity that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan and administration thereof.

9.6 **Retention and Enforcement and Release of Causes of Action**. Except as otherwise provided in the Plan, or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b), the Debtors, their Estates, the Trust Agreements, and any other party, including any of the Buyers (only to the extent Causes of Action were transferred from the Debtors to the applicable Buyer under the respective APA), expressly reserve all rights to retain and prosecute any and all of the Causes of Action identified in **Exhibit A** to the Plan, as the case may be. Sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting and otherwise administering (or decline to do any of the foregoing) any or all of the Causes of Action pursuant to the terms of the Plan, the Liquidating Trust

Agreement, and any other applicable document shall be held by (A) the Debtors, prior to the Effective Date (except to the extent a Cause of Action was transferred from the Debtors to an applicable Buyer under the respective APA, in which case the applicable Buyer has such authority), and (B) on or after the Effective Date, by (i) the Liquidating Trustee, with respect only to those Causes of Action that are Excluded Assets (the "Retained Causes of Action"), and (ii) with respect to any other Causes of Action, any other party that acquired rights to such Cause of Action, including any Buyer (only to the extent Causes of Action were transferred from the Debtors to the applicable Buyer under the respective APA). No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to any or all of the Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

10.1 **Retention of Jurisdiction**. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Chapter 11 Cases to the fullest extent of applicable law, including, without limitation:

(a) To determine the validity under any applicable law, allowability, classification and priority of Claims and Equity Interests upon objection, or to estimate, pursuant to Bankruptcy Code section 502(c), the amount of any Claim that is, or is anticipated to be, contingent or unliquidated as of the Effective Date;

(b) To construe and to take any action authorized by the Bankruptcy Code and requested by the Trustees or any other party in interest to enforce the Plan and the documents and agreements filed and/or executed in connection with the Plan, including the Trust Agreements, issue such orders as may be necessary for the implementation, execution and consummation of the Plan, and to ensure conformity with the terms and conditions of the Plan, such documents and agreements and other orders of the Bankruptcy Court, notwithstanding any otherwise applicable non-bankruptcy law;

(c) To determine any and all applications for allowance of Compensation Claims, and to determine any other request for payment of Administrative Claims;

(d) To determine all matters that may be pending before the Bankruptcy Court on or before the Effective Date;

(e) To resolve any dispute regarding the implementation or interpretation of the Plan, the Trust Agreements or any related agreement or document that arises at any time before the Chapter 11 Cases are closed (or if the Chapter 11 Cases are reopened), including the determination, to the extent a dispute arises, of the entities entitled to a distribution within any particular Class of Claims;

(f) To determine all applications, adversary proceedings, contested matters and other litigated matters, that were brought or that could have been brought in the

31

Bankruptcy Court on or before the Effective Date over which this Bankruptcy Court otherwise has jurisdiction;

(g)     To determine matters concerning local, state and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146, and to determine any tax claims that may arise against the Trustees as a result of the transactions contemplated by the Plan;

(h)     To modify the Plan pursuant to Bankruptcy Code section 1127 or to remedy any apparent nonmaterial defect or omission in the Plan, or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes; and

(i)     To hear any other matter not inconsistent with the Bankruptcy Code.

10.2    **Terms Binding**.    Upon the occurrence of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Liquidating Trustee, as applicable, in connection with the Plan, shall be binding upon the Debtors, the Liquidating Trustee, all holders of Claims and Equity Interests and all other Persons and Entities that are affected in any manner by the Plan.    All agreements, instruments and other documents filed in connection with the Plan shall have full force and effect, and shall bind all parties thereto, subject to the occurrence of the Effective Date, upon the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtors or the Liquidating Trustee, or shall be issued, delivered or recorded on the Effective Date or thereafter.    The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

10.3    **Severability**.    If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:    (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Liquidating Trustee, and the Plan Contributor, which consent shall not be unreasonably withheld; and (c) non-severable and mutually dependent.

10.4    **Computation of Time**.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

10.5    **Confirmation Order and Plan Control**.    Except as otherwise provided in the Plan, in the event of any inconsistency between the Plan and the Disclosure Statement, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan,

the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

10.6 **Incorporation by Reference**. The Plan Supplement is incorporated herein by reference.

10.7 **Modifications to the Plan**. Subject to the reasonable consent of the Committee and the Plan Contributor, the Debtors may amend or modify the Plan, the Plan Supplement, and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any applicable court order. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtors, subject to the reasonable consent of the Committee and the Plan Contributor, expressly reserve their rights to alter, amend or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

10.8 **Revocation, Withdrawal or Non-Consummation**. The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan, shall be null and void; provided, however, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against any of the Debtors or any other Person or Entity, to prejudice in any manner the rights of any of the Debtors or any Person or Entity in any further proceedings or to constitute an admission of any sort by any of the Debtors or any other Person or Entity.

10.9 **Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in the Chapter 11 Cases, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

10.10 **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date, and as appropriate, thereafter.

10.11 **Notice**. All notices, requests and demands to or upon the parties listed below, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall

be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

<u>TO THE DEBTORS:</u>

ECOtality, Inc.
P.O. Box 20336
Phoenix, AZ 85036-0336
<u>Attention</u>:    Susie Herrmann

With a copy to:

Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:    (310) 229-1000
Facsimile:    (310) 229-1001
<u>Attention</u>:    David P. Simonds
              Arun Kurichety

- and -

Parker Schwartz, PLLC
7310 N. 16th Street, Suite 330
Phoenix, Arizona 85020
Telephone:    (602) 282-0476
Facsimile:    (602) 282-0478
<u>Attention</u>:    Jared Parker


<u>TO THE LIQUIDATING TRUST:</u>

[insert address]

With a copy to:

Dickinson Wright PLLC
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone:    (602) 285-5040
<u>Attention</u>:    Carolyn J. Johnsen

TO THE PLAN CONTRIBUTOR:

    Car Charging Group, Inc.
    1691 Michigan Ave., Ste. 601
    Miami Beach, Florida 33139
    Telephone:    (305) 521-0200
    Attention:    Amy K. Maliza

    With a copy to:

    Schafer and Weiner, PLLC
    40950 Woodward Ave., Ste. 100
    Bloomfield Hills, Michigan  48304
    Telephone:    (248) 540-3340
    Attention:    Michael E. Baum

10.12 **Reservation of Rights**.  The filing of the Plan, the Disclosure Statement, any statement or provision contained in the Plan, or the taking of any action by the Debtors or the Liquidating Trustee, as applicable, with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtors or the Liquidating Trustee, as applicable, with respect to any holders of Claims against or Equity Interests in the Debtors.

10.13 **No Waiver**.  Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtors' Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of the Debtors to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of the Debtors, the Liquidating Trustee or the Plan Contributor, as applicable, to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtors, the Liquidating Trustee or the Plan Contributor, as applicable, with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of the Debtors, the Liquidating Trustee or the Plan Contributor, as applicable, or their respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the holder of such Claim, Administrative Claim or Equity Interest.

Dated:  October 28, 2014

ECOtality, Inc.
Electric Transportation Engineering Corporation
ECOtality Stores, Inc.
ETEC North, LLC
The Clarity Group, Inc.
G.H.V. Refrigeration, Inc.

By:  ___/s/_____
       Name:  Susie Herrmann
       Title:  Chief Financial Officer

**Exhibit A**

**Non-Exclusive List of Causes of Action**

## NON-EXCLUSIVE LIST OF CAUSES OF ACTION

The Plan preserves all causes of action, whether or not such Causes of Action were Excluded Assets, and whether or not any Cause of Action was otherwise waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order.[1] The below is a non-exclusive list of (i) Causes of Action and (ii) Retained Causes of Action, to which the Debtors and their Estates expressly reserve all rights to retain and prosecute, as the case may be, in accordance with Bankruptcy Code section 1123(b). The Debtors shall have, prior to the Effective Date, and the Liquidating Trustee shall have, or, with respect to Causes of Action that are not Retained Causes of Action, such party that obtained rights to such Cause of Action under an APA, on or after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting and otherwise administering (or decline to do any of the foregoing) any or all of the Retained Causes of Action of Causes of Action, as the case may be, pursuant to the terms of the Plan, the Liquidating Trust Agreement, or such other applicable document.

For the avoidance of doubt, unless expressly released pursuant to the Plan or a Final Order, Causes of Action not listed on the attached list are not released, and the Estates, the Liquidating Trustee, or Buyer (only to the extent Causes of Action were transferred from the Debtors to the applicable Buyer under the respective APA), as applicable, expressly retain all Causes of Action of any kind whatsoever against all Persons and Entities as listed in the Debtors' Schedules, including, without limitation, the categories of Causes of Action set forth below. Failure to attribute any specific Cause of Action to a particular Person or Entity on the Debtors' Schedules shall not under any circumstance be interpreted to mean that such cause of action is not retained against such entity. All possible Causes of Action, including those not listed below, are retained against all Persons and Entities not expressly released pursuant to the Plan or a Final Order. In the event of any apparent inconsistency between the releases of Persons or Entities in their capacities as such pursuant to the Plan or a Bankruptcy Court order and the attached list, such releases granted pursuant to the Plan or a Final Order shall govern.

No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to any or all of the Retained Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

Section 1.16 of the Plan further defines Causes of Action to mean:

> "any and all present or future claims, rights, legal and equitable
> defenses, offsets, recoupments, actions in law or equity or otherwise,
> choses in action, obligation, guaranty, controversy, demand, action
> suits, damages, judgments, third-party claims, counter-claims, cross-
> claims against any Person or Entity, whether known or unknown,
> liquidated or unliquidated, foreseen or unforeseen, existing or
> hereafter arising, whether based on legal or equitable relief, whether
> arising under the Bankruptcy Code or federal, state, common, or other
> law or equity, whether or not the subject of a pending litigation or

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the *Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of May 20, 2014 (the "Plan").

i

proceedings on the Effective Date or thereafter, including without limitation, all other actions described in the Plan, including <u>Section 9.6</u> of the Plan.

Notwithstanding and without limiting the generality of <u>Section 9.6</u> of the Plan, the Debtors have identified below certain specific Causes of Action, including, without limitation, the following:

  a.  Claims disclosed in the APAs

  b.  Claims related to contracts and leases;

  c.  Claims related to pending and possible litigation;

  d.  Claims related to accounts receivable and accounts payable;

  e.  Claims related to warranty/manufacturing defects of chargers which overheated;

  f.  Claims related to the DOE;

  g.  Claims related to any Avoidance Actions;

  h.  Litigation relating to objections of any Creditor claims;

  i.  Objections, disputes or claims arising from any pending tax or other audits; and

  j.  Claims against any landlord, insurance company or any other entity holding a deposit or advance payment that has not been returned.

### A.  <u>Claims Disclosed in the APAs</u>

Causes of Action transferred from the Debtors to the applicable Buyer under their respective APAs.

### B.  <u>Claims Related to Contracts and Leases</u>

Unless otherwise released by the Plan, all Causes of Action are hereby reserved, which such Causes of Action are based in whole, or in part, upon any and all contracts and leases to which any Debtor is a party, or pursuant to which any Debtor has any rights whatsoever, regardless of whether such contract or lease is specifically identified herein. The claims and Causes of Action reserved include those against vendors, suppliers of goods and services, financial institutions or any other parties for: (i) for overpayments, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment or setoff; (ii) for breach of contract, wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (iii) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors; (iv) for payments, back charges, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier,

vendor, insurer, surety, factor, lender, service provider, lessor or other party; (v) for any liens, including mechanic's, artisan's, materialmen's, possessory or statutory liens held by any one or more of the Debtors; (vi) arising out of environmental or contaminant exposure matters against owners, landlords, lessors, lessees, environmental consultants or contractors, environmental or other governmental agencies or suppliers of environmental services or goods, including any solid or hazardous waste haulers, transporters or arrangers; (vii) counterclaims and defenses related to any contractual obligations; (viii) any turnover actions arising under Bankruptcy Code sections 542 or 543; (ix) for unfair competition, interference with contract or potential business advantage, infringement of intellectual property or any tort claims; and (x) for any claims against the Debtors' insurance carriers, including for payments or other amounts owed by such insurance carrier.

### C. Claims, Defenses, Cross-Claims and Counter-Claims Related to Litigation and Possible Litigation

The Debtors are party to, or believe they may become party to litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial. Unless otherwise released by the Plan, all Causes of Action against or related to all Persons or Entities that are party to or that may in the future become party to litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, are hereby reserved.

### D. Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, all Causes of Action against or related to all Persons and Entities that owe or that may in the future owe money to the Debtors, regardless of whether such entity is explicitly identified herein, the Debtors' Schedules, including Schedule B-16 for each Debtor, or any Plan Supplement, and any amendments thereto, are hereby reserved. Furthermore, the Debtors expressly reserve all Causes of Action and defenses or counterclaims against or related to all Persons and Entities that assert or may assert that the Debtors owe money to them. Certain claims against Persons or Estates arising from accounts receivables of Electric Transportation Engineering Corporation (d/b/a ECOtality North America), as identified on **Exhibit 1** attached hereto, as may be amended or supplemented, are hereby reserved.

### E. Claim Against United States of America and the DOE

Unless otherwise released by the Plan, all Causes of Action against the United States of America and the DOE are hereby reserved.

### F. Claims Related to Avoidance Actions

Unless otherwise released by the Plan, all Causes of Action against any Person or Entity arising under or related to any and all actions that are filed or that may be filed pursuant to Bankruptcy Code sections 544, 545, 547, 548, 550 or 551, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Bankruptcy Code sections, or (b) any other similar actions or proceedings filed to recover property for or on behalf of the Estates, in each case, which may have or will be brought in the Debtors' bankruptcy proceedings, regardless of

whether such Person or Entity is explicitly identified herein, the Plan, the Debtors' Schedules, including Statement of Financial Affairs 3(b), or any Plan Supplement, and any amendments thereto, are hereby reserved.

### G.    Litigation Relating to Objections of Creditor Claims

Unless otherwise released by the Plan, all Causes of Action against any Person or Entity arising out of or related to claims in the Chapter 11 Cases, whether scheduled by the Debtors, even if not listed as disputed, unliquidated or contingent, or arising under a Proof of Claim filed in Chapter 11 Cases, as well as the continuing right to object to any such claim, including specifically any claims of Cloud Utility Pty, Ltd, Brisbane Queensland, Australia, are hereby reserved.

### H.    Objections, Disputes or Claims Arising From Any Pending Tax or Other Audits

Unless otherwise released by the Plan, all Causes of Action against any Person or Entity arising out of or related to claims that result from any pending or disputed imposition of taxes, penalties or other charge, as well as the right to object or dispute such a charge under available administrative procedures or to seek relief from such charges as may be appropriate under Bankruptcy Code section 505, including specifically the sales tax audit conducted by the State of California and personal property tax claims under consideration in several jurisdictions, are hereby reserved.

### I.    Claims Against Landlords, Insurance Companies or Any Other Person or Entity Holding a Deposit or Advance Payment That Has Not Been Returned

Unless otherwise released by the Plan, all Causes of Action against any Person or Entity arising out of or related to funds paid to a landlord, insurance company or to any other Person or Entity as a deposit or advance payment, which has not been returned to the Debtors, are hereby reserved.

### J.    Claims Against the Debtors' Current and Former Officers and/or Directors

The releases contained in the Plan shall in no way release or discharge the current and former officers and directors, shareholders, affiliates, subsidiaries, principals, employees, agents, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers and consultants from any claim related to their prepetition conduct with respect to the prepetition operations and affairs of the Debtors. Such claims include, without limitation, claims for deepening insolvency; breach of fiduciary duties; misrepresentation, negligence, and other misconduct; aiding and abetting such misconduct; and fraudulent conveyances and preference recoveries.

iv

**<u>Exhibit 1</u>**

**Non-Exclusive List of Accounts Receivable of
Electric Transportation Engineering Corporation (d/b/a ECOtality North America)**

**Non-Exclusive List of Accounts Receivable of**
**Electric Transportation Engineering Corporation (d/b/a ECOtality North America)**

**[TO BE VERIFIED]**

BUFFALO MATERIALS HANDLING
CARLTON-BATES COMPANY
EXIDE TECHNOLOGIES - JERSEY
GNB INDUSTRIAL POWER
GNB INDUSTRIAL POWER
FACTORY DIRECT
HOME DEPOT - ATLANTA
INDUSTRIAL POWER SOURCE
INTERSTATE POWERCARE
J.H. RYDER - MISSISSAUGA
J.H. RYDER - VILLE ST LAURENT
LITE SOLAR CORP
LUNDY INDUSTRIAL SALES LTD
PRONERGI SOLUCIONES, SA DE CV
SPECIALTY EQUIPMENT LLC
SPECIALTY VEHICLES
STANGCO INDUSTRIAL EQUIPMENT INC.
RYDER TLC - INDIANAPOLIS
WATTS EQUIPMENT COMPANY INC.
YALE CAROLINAS INC.

i